[Civ. No. 22590. Third Dist. Mar. 27, 1984.]

DEANE HILLSMAN, Plaintiff and Appellant, v.
SUTTER COMMUNITY HOSPITALS OF SACRAMENTO,
Defendant and Respondent.

**[Opinion certified for partial publication.†]**

†See footnote 1, *post,* page 747.

**COUNSEL**

Jerome Berg, Carolyn Morris and Linda L. Mallette for Plaintiff and Appellant.

Wendy S. Ball as Amicus Curiae on behalf of Plaintiff and Appellant.

Thomas A. Tweedy, William M. Briggs, McDonough, Holland & Allen, Gary F. Loveridge and Betsy S. Kimball for Defendant and Respondent.

**OPINION**

**SIMS, J.**—Plaintiff Deane Hillsman, M.D. appeals from an order and judgment dismissing his complaint entered after the trial court sustained defendant Sutter Community Hospitals' demurrers to plaintiff's first, second and third causes of action without leave to amend, and granted summary judgment for defendant on plaintiff's fourth cause of action. On appeal plaintiff

challenges only the sustaining of demurrers to the first and second causes of action.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

■ "Because this appeal arises from a judgment entered after the sustaining of a general demurrer, we must, under established principles, assume the truth of all properly pleaded material allegations of the complaint in evaluating the validity of the trial court's action." (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].) The third amended complaint alleges in part:

On or about May 28, 1970, plaintiff and defendant entered into a written agreement under which plaintiff was to be employed as a full-time, hospital-based physician.[2] Plaintiff was to coordinate a comprehensive respiratory

---

[1]Pursuant to rule 976.1 of the California Rules of Court, the Reporter of Decisions shall publish all portions of this opinion except parts IV, V, and VI, which shall not be published.

[2]A copy of the agreement was attached to the complaint and was incorporated in the complaint in its entirety. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 315-318, pp. 1984-1987.) The agreement, termed a "letter of understanding," provided in full as follows: "May 28, 1970

"Deane Hillsman, M.D., Sutter Memorial Hospital, Sacramento, California

"Dear Dr. Hillsman:

"The following is put forth as a Letter of Understanding between the Sutter Community Hospitals and Deane Hillsman, M.D. regarding your employment as a full-time hospital-based physician.

"It is understood that you will coordinate a comprehensive respiratory program which will include the pulmonary laboratory, inhalation therapy, and chest physical therapy relating to in and out-patient services at both Sutter General and Sutter Memorial Hospitals. Of necessity, the main base of operation will be at the Sutter Memorial Hospital. A main purpose of this respiratory program is to make it available to any member of the practicing medical community who may refer patients for either investigation or therapy and be reasonably assured that these patients will receive good management by both medical and paramedical personnel. Because of the sensitive nature of hospital-based physicians, it is understood that cooperation with and incorporation of the interest and talents of the local medical community will be sought, particularly those practitioners of medical and surgical chest disease.

"Your duties as a pulmonary specialist will include the overall direction of the pulmonary laboratory and the expansion of its service capacity. These duties will also include the overall advising, coordinating, and consulting with regard to the inhalation therapy and the development of chest physical therapy service. It is anticipated that an active research and development program will eventually become a key part of the endeavor.

"It is further understood that compensation in the form of salary will be $20,000 annually ($1,667.00 per month). In addition, there will be a professional fee of $5.00 payable to you for routine reports and $10.00 for more extensive testing procedures. This will be charged to the hospital on a monthly basis. The basic fee for these respective services will be $50.00 for a routine report and $100.00 for the more extensive report respectively.

"Also, it is understood that you will have the opportunity to practice private consultative chest medicine on a limited basis. A clinical and research association with you and the University of California at Davis and possibly the inhalation therapy school at American River College is understood. A prime objective will be to put the pulmonary therapy service

program, including a pulmonary laboratory, inhalation therapy, and chest physical therapy at Sutter General and Sutter Memorial Hospitals. The agreement allowed plaintiff to maintain a limited private medical practice in addition to his duties for defendant.

The agreement provided in part that "It is further understood that renegotiation or termination of this letter of understanding by either party may be accomplished upon thirty days notice. [¶] We look forward to a long, pleasant, and mutually satisfactory relationship with you and the Sutter Community Hospitals."

On or about August 31, 1973, defendant breached the employment agreement by terminating plaintiff's employment. It is alleged that plaintiff's termination was contrary to an implied promise that defendant would be terminated only as provided in defendant's bylaws. It is alleged further that "defendant promised plaintiff a long, pleasant, and mutually satisfactory relationship with" defendant, and that plaintiff, "In reliance upon the representations [made] by defendant . . . and as a bargained for element of such agreement" agreed to leave the clinic where he was formerly employed and where he expected substantial benefits, including tenure, salary increases, and senior staff status. Plaintiff pleads entitlement to damages in excess of $350,000.

Plaintiff's second cause of action pleaded a common count for the value of services rendered by plaintiff at the request of defendant.

Plaintiff posits various legal theories in support of his pleading, including contentions his termination was barred by (1) an express covenant in the letter of understanding; (2) his furnishing of "independent consideration" for the agreement in the form of his detrimental reliance in leaving his prior position of employment and its associated benefits; and (3) an implied contractual provision that plaintiff would not be terminated except in accordance with bylaws of the hospital providing for grounds of discipline, notice and

---

and pulmonary laboratory on an economical sound basis at both Sutter General and Sutter Memorial. The income and expense of the pulmonary department both laboratory and therapy sections will be set up as a separate account and these figures made available to Dr. Hillsman for these purposes.

"*It is further understood that renegotiation or termination of this letter of understanding by either party may be accomplished upon thirty days notice.*

"*We look forward to a long, pleasant, and mutually satisfactory relationship with you and the Sutter Community Hospitals.*

"If this letter sets forth our understanding and agreement, please sign the enclosed copy of the letter and return to me.

"Very truly yours, /S/, Wm. A. Schaeffer, Executive Director

"The above correctly sets forth our understanding.

"/S/ Deane Hillsman, M.D." (Italics added.)

hearing. We conclude plaintiff's third contention has merit so that we reverse the judgment of dismissal.

DISCUSSION

I

A

■ We note at the outset the general rule governing the duration of employment contracts, codified as Labor Code section 2922: "An employment, having no specified term, may be terminated at the will of either party on notice to the other. Employment for a specified term means employment for a period greater than one month." (See *Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d at p. 172; *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290, 295 [188 Cal.Rptr. 159].) This statute creates a presumption that an employment contract is terminable at will. (*Pugh* v. *Sees's Candies, Inc.* (1981) 116 Cal.App.3d 311, 324 [171 Cal.Rptr. 917].)[3] This presumption "is subject, like any presumption, to contrary evidence. This may take the form of an agreement, express or implied, that the relationship will continue for some fixed period of time. Or . . . it may take the form of an agreement that the employment relationship will continue indefinitely, pending the occurrence of some event such as the employer's dissatisfaction with the employee's services or the existence of some 'cause' for termination." (*Id.,* at pp. 324-325, fns. omitted.)

B

■ Although appellant's brief is not entirely clear, it appears he first contends the presumption of at-will employment is sufficiently rebutted by his pleading of an explicit contractual promise that his employment would be terminated only for cause. He argues the letter of understanding contains the express promise on which he relies.

Here the letter agreement was pleaded in its entirety by attachment to the complaint. (See fn. 2, *ante.*) ■ "Ordinarily a written contract is sufficiently pleaded if it is set out in full or its terms alleged according to their legal effect. . . . But if the instrument is ambiguous, the pleader must allege the meaning he ascribes to it. [Citations.]" (3 Witkin, *op. cit. supra,* Pleading, § 402, p. 2059.) Where a written contract is pleaded by attachment to and incorporation in a complaint, and where the complaint fails to allege

---

[3]*Pugh* makes it clear the presumption is one of producing evidence. (See *Pugh, supra,* 116 Cal.App.3d at pp. 329-330.)

that the terms of the contract have any special meaning, a court will construe the language of the contract on its face to determine whether, as a matter of law, the contract is reasonably subject to a construction sufficient to sustain a cause of action for breach.[4] (See *Sweet* v. *Vista Irrigation Dist.* (1933) 134 Cal.App. 518, 520-521 [25 P.2d 512]; 3 Witkin, *op. cit. supra,* Pleading, § 320, p. 1988, § 402, pp. 2059-2060; compare *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311, 314-315 [38 Cal.Rptr. 505, 392 P.2d 265].) Since plaintiff has not pled that the language of the letter-agreement is subject to any special meaning, we construe the language itself.

 Plaintiff locates an express promise of employment terminable only for cause in the penultimate paragraph of defendant's letter of understanding, which recites that "We look forward to a long, pleasant, and mutually satisfactory relationship with you and the Sutter Community Hospitals." Plaintiff apparently contends the foregoing language contained a promise of "permanent" employment for a term of more than one month, so that the contract is not one falling within Labor Code section 2922. Plaintiff implicitly argues that since defendant allegedly promised employment for a term more than one month, plaintiff could be terminated only if he failed to perform his agreed duties satisfactorily. However, it is immediately apparent that the language relied on by plaintiff expresses a mere hope or expectation rather than a promise. For example, defendant could not *promise* a "mutually satisfactory" relationship because it had no control over plaintiff's conduct and could not guarantee that plaintiff's performance would be satisfactory; only plaintiff could do that. Plaintiff's interpretation twists defendant's polite closing salutation far beyond its obvious purpose, which was simply to add a touch of personal warmth to an otherwise businesslike letter. The foregoing language did not promise plaintiff employment for a specified term of more than one month.[5]

The letter agreement also provides, "It is further understood that renegotiation or termination of this letter of understanding by either party may be accomplished upon thirty days notice." Plaintiff suggests the 30-day

---

[4]The rule on demurrer is simply a variation on the well-recognized theme that "It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Leo F. Piazza Paving Co.* v. *Foundation Constructors, Inc.* (1981) 128 Cal.App.3d 583, 591 [177 Cal.Rptr. 268].)

[5]Plaintiff also points to language of the letter referring to the nature of plaintiff's duties, including "overall direction of the pulmonary laboratory." Plaintiff argues this language implies plaintiff has contracted to perform certain tasks and that the duration of the agreement must be commensurate with the time required to complete such tasks. We find nothing in the agreement indicating plaintiff was to complete the tasks referred to. The agreement simply defines what plaintiff was to do while employed, not how long he was to do the agreed tasks.

clause merely imposes a 30-day notice requirement before terminating the agreement *for cause*. However, this language is silent with respect to whether the agreement shall be terminable with or without cause. Accordingly, we find nothing *in the language of the agreement* to rebut the presumption of Labor Code section 2922 that plaintiff's employment was terminable at will by either party. The agreement contains no express promise of employment terminable only for cause.

## II

Relying principally on *Rabago-Alvarez* v. *Dart Industries, Inc.* (1976) 55 Cal.App.3d 91 [127 Cal.Rptr. 222], plaintiff next contends he furnished consideration independent of the services to be performed by the employee for his prospective employer and the furnishing of this independent consideration bars his termination except for cause. The independent consideration alleged by plaintiff is that he left his medical practice at a clinic and gave up expected tenure, salary increases, senior staff status, security, and other employment prospects.

In *Rabago-Alvarez,* plaintiff left employment selling copper gift ware and went to work for a division of Dart Industries, Inc. (Dart). Representatives of Dart assured plaintiff her position would be permanent as long as her work efforts were satisfactory and that she would never be terminated arbitrarily but only for cause if she failed to perform her work and assignments. (*Id.,* at pp. 94-95.) Her employment with Dart was terminated after she was taken by her boss to view some topless and bottomless entertainment and insisted on leaving. (*Id.,* at p. 95.) A jury awarded damages for wrongful termination of employment and the Court of Appeal affirmed. (*Ibid.*) The court's opinion contained the following unfortunate language: "It is settled that contracts of employment in California are terminable only for good cause if either of two conditions exist: (1) the contract was supported by consideration independent of the services to be performed by the employee for his prospective employer; or (2) the parties agreed, expressly or impliedly, that the employee could be terminated only for good cause." (*Id.,* at p. 96.)

As stated by *Rabago-Alvarez,* the foregoing rule can easily lead to the incorrect conclusion (advanced here by plaintiff) that the presence of "independent consideration" is sufficient, even in the absence of an express or implied agreement, to require that an employee be fired only for cause. (See, e.g., *Strauss* v. *A. L. Randall Co.* (1983) 144 Cal.App.3d 514, 517 [194 Cal.Rptr. 520].)

The "independent consideration" rule of *Rabago-Alvarez* was correctly analyzed by Justice Grodin in *Pugh* v. *See's Candies, Inc., supra,* 116

Cal.App.3d at pages 325-326. Prior to *Pugh,* cases had required an employee to show that he or she furnished consideration to the employer, independent of employment services, in order for the employee to enforce the employer's promise of termination only for cause. (See, e.g., *Ruinello* v. *Murray* (1951) 36 Cal.2d 687, 689 [227 P.2d 251]; *Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 39 [172 P.2d 867]; *Levy* v. *Bellmar Enterprises* (1966) 241 Cal.App.2d 686, 690 [50 Cal.Rptr. 842]; *Ferreyra* v. *E. & J. Gallo Winery* (1964) 231 Cal.App.2d 426, 430 [41 Cal.Rptr. 819].) As *Pugh* points out, these cases reasoned that since the employee did not promise to quit only for cause, the employer could not be held to a promise to terminate only for cause unless the employee furnished the employer consideration independent of employment services themselves. (*Pugh, supra,* 116 Cal.App.3d at p. 325.) In line with this doctrine, and following *Millsap* v. *National Funding Corp.* (1943) 57 Cal.App.2d 772, 776 [135 P.2d 407], *Rabago-Alvarez* found independent consideration for Dart's assurances of termination only for cause in plaintiff's act of leaving her prior permanent employment. (*Rabago-Alvarez, supra,* 55 Cal.App.3d at p. 96.)

In *Pugh* Justice Grodin concluded the rule of "independent consideration" represented an unwarranted application of the doctrine of mutuality of obligation: "A contract which limits the power of the employer with respect to the reasons for termination is no less enforcible because it places no equivalent limits upon the power of the employee to quit his employment. 'If the requirement of consideration is met, there is no additional requirement of . . . equivalence in the values exchanged, or "mutuality of obligation." ' (Rest.2d Contracts, § 81 (Tent. Draft No. 2, 1965); 1A Corbin on Contracts (1963) § 152, pp. 13-17; see *Chinn* v. *China Nat. Aviation Corp.* (1955) 138 Cal.App.2d 98 [291 P.2d 91]; *Toussaint* v. *Blue Cross & Blue Shield of Mich.* (1980) 408 Mich. 579, 600 [292 N.W.2d 880, 885].)" (*Pugh* v. *See's Candies, Inc., supra,* 116 Cal.App.3d at p. 325.)

The *Pugh* court relegated the notion of independent consideration to an evidentiary function, as tending to show the presence of an agreement: "it is more probable that the parties intended a continuing relationship, with limitations upon the employer's dismissal authority, when the employee has provided some benefit to the employer, or suffers some detriment, beyond the usual rendition of service." (*Id.,* at p. 326.)

*Rabago-Alvarez*'s statement of the rule of "independent consideration" is thus doubly flawed. The case first assumed incorrectly an employee had to show consideration separate from employment services in order to enforce a contract providing for termination for cause. The case then took the discredited doctrine of "independent consideration" (formerly necessary to

enforce a contract providing for termination for cause) and made the doctrine a substitute for the contract itself.

As we have seen, *Rabago-Alvarez,* which itself involved express oral promises, cannot properly be read as dispensing with the requirement that termination for cause be found in an express or implied contract or in considerations of public policy.[6] Thus, an employee does not convert an at-will employment agreement into an agreement providing for termination-only-for-cause simply by showing that the employee left attractive prior employment in order to take a new job and therefore furnished the employer "independent consideration."

### III

We next consider whether plaintiff pleaded facts sufficient to rebut the presumption of at-will employment in Labor Code section 2922 by alleging an implied-in-fact promise that plaintiff would not be terminated except upon grounds and according to procedures set forth in the hospital's bylaws. (See *Pugh* v. *See's Candies, Inc., supra,* 116 Cal.App.3d at p. 327; see also *Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 684 [134 Cal.Rptr. 815, 557 P.2d 106].)

"In determining whether there exists an implied-in-fact promise for some form of continued employment courts have considered a variety of factors . . . . These have included, for example, the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." (*Pugh, supra,* 116 Cal.App.3d at p. 327, fns. omitted.)

An employer may maintain rules or procedures related to the termination of employment which may form part of an implied contract of employment if the employer and employee had a mutual understanding that the rules or procedures would apply to the employee. (*Perry* v. *Sindermann* (1972) 408 U.S. 593, 601 [33 L.Ed.2d 570 [579, 92 S.Ct. 2694]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 207 [124 Cal.Rptr. 14, 539 P.2d 774]; *Walker* v. *Northern San Diego County Hospital Dist.* (1982) 135 Cal.App.3d 896, 902-905 [185 Cal.Rptr. 617].)

---

[6]Other cases relied upon by plaintiff also reflect express promises by the employer that employment would be permanent or termination would be only for cause. (See, e.g., *Millsap* v. *National Funding Corp., supra,* 57 Cal.App.2d at p. 775; *Ryan* v. *Upchurch* (S.D.Ind. 1979) 474 F.Supp. 211, 213.) *Chinn* v. *China Nat. Aviation Corp.* (1955) 138 Cal.App.2d 98 [291 P.2d 91], also cited by plaintiff, did not address the question of whether plaintiff could be terminated only for cause; the case concerns plaintiff's entitlement to employment benefits.

Defendant suggests that the doctrine of implied-in-fact covenants is inapplicable on the instant facts because an implied-in-fact covenant of non-termination except as provided in the bylaws would contradict an express provision of the letter of understanding allowing termination-at-will. (See *Witt* v. *Union Oil Co.* (1979) 99 Cal.App.3d 435, 441 [160 Cal.Rptr. 285]; *Wal-Noon Corp.* v. *Hill* (1975) 45 Cal.App.3d 605, 613 [119 Cal.Rptr. 646]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 580, p. 497.)

■ It is well settled that " 'A covenant will not be implied against express terms or to supply a term on a matter *as to which the contract is intentionally silent.*' " (*Witt* v. *Union Oil Co., supra,* 99 Cal.App.3d at p. 441, quoting 1 Witkin, Summary of Cal. Law, *op. cit. supra,* Contracts, § 580, p. 497 (italics added); see *Tanner* v. *Title Ins. & Trust Co.* (1942) 20 Cal.2d 814, 824 [129 P.2d 383].) In *Wal-Noon Corp.* v. *Hill, supra,* 45 Cal.App.3d 605, we explained that "where the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability and to withdraw from one party benefits for which he has bargained and to which he is entitled." (*Id.,* at p. 613.)

Both *Witt* and *Wal-Noon* are distinguishable. In *Witt,* for example, plaintiff leased a service station pursuant to a lease with an oil company that provided for a fixed term of three years with termination of the lease occurring automatically and without notice at the end of the third year. (*Witt* v. *Union Oil Co., supra,* 99 Cal.App.3d at p. 437.) Plaintiff filed a complaint contending, inter alia, defendant's termination of the lease on the date specified in the lease violated an implied covenant of good faith. However, the Court of Appeal upheld the sustaining of a demurrer without leave to amend on the ground the explicit terms of the lease controlled. (*Id.,* at p. 441.) Implicit in plaintiff's argument was the assumption he had an implied right to possession of the premises beyond a three-year term. That contention, however, was in direct conflict with the explicit provision in the lease limiting his term to three years.

Similarly, in *Wal-Noon Corp.* v. *Hill, supra,* 45 Cal.App.3d 605, plaintiffs, lessees of a building, replaced the roof of the leased premises at their expense without notice to the lessor and then brought suit to collect the roofing expense from the lessor. (*Id.,* at p. 609.) The lease contained a clause obligating the lessor to make repairs and we concluded that "notice as a condition precedent to the lessors' obligation to repair is . . . clearly apparent from the terms of the written lease . . . ." (*Id.,* at p. 612.) We therefore rejected plaintiff's contention it should recover on a quasi-contractual theory of money paid by mistake, since that theory "would effec-

tively deprive defendants of part of the bargained-for consideration of the lease, i.e., the right of control over repairs for which they are therein held responsible." (*Id.* at p. 613.)

In the instant case, there is no readily ascertainable conflict between plaintiff's implied contract theory and the express terms of the letter of understanding. The salient language of the letter agreement simply provides that "termination of this letter of understanding by either party may be accomplished upon thirty days notice." Unlike *Witt, supra,* plaintiff does not challenge an express time-frame set forth in the agreement. He does not contend, for example, that he was entitled to 40 or 60 days notice of termination. Rather, he challenges the *grounds and procedures* by which termination could be effected. With respect to that question the letter presents a lacuna. It does not state, for example, that termination of the agreement could be accomplished "for any reason" or "at will" or "without cause" or "without a hearing." Therefore, unlike the situation in *Wal-Noon,* the agreement does not expressly preclude plaintiff's pleaded assertion that termination was to be in accordance with the hospital's bylaws. In part I, *ante,* we pointed out that the letter's failure to refer to termination-for-cause created an evidentiary void insufficient to rebut the presumption of employment at will. We now conclude the same void in contract language cannot be used to defeat plaintiff's expressly pleaded theory of implied contract.

It may be, of course, that the evidence will show the parties bargained for termination-without-cause and that "the contract is intentionally silent" (*Witt, supra,* 99 Cal.App.3d at p. 441) with respect to any cause required for termination. On review of an order sustaining a demurrer, however, we take the language of the letter agreement on its face (see *Sweet* v. *Vista Irrigation Dist., supra,* 134 Cal.App. at pp. 520-521); we cannot say as a matter of law the letter expressly excludes an implied agreement that plaintiff would be terminated according to the bylaws.

Defendant argues the bylaws themselves show that the procedures set forth therein apply only to a revocation of staff privileges at the hospital and not to the termination of a supervisorial employee. Once again, however, defendant asks that we exceed the proper scope of review of an order sustaining a demurrer. Plaintiff pleaded he was terminated in violation of the bylaws. Although plaintiff attached excerpts from the bylaws to his complaint, the excerpts merely describe grounds and procedures for discipline; they do not exclude application of the bylaws to termination of a supervisorial employee. Defendant's brief refers to matters in the trial court indicating the bylaws apply only to revocation of staff privileges. That reference, it turns out, is to defendant's memorandum of points and authorities in support of the demurrer. Allegations in a memorandum of points and

authorities may not contravene properly pleaded facts. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 797, pp. 2410-2411.)

Since plaintiff has sufficiently pleaded he was terminated in violation of an implied contract with defendant, the judgment of dismissal must be reversed.

IV-VI*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment (order of dismissal) is reversed and the cause is remanded to the trial court for further proceedings.

Evans, Acting P. J., and Blease, J., concurred.

---

*See footnote 1, *ante,* page 747.