[No. B029674. Second Dist., Div. Three. Nov. 9, 1988.]

RICHARD S. ANDERSON, JR., Plaintiff and Appellant, v. SAVIN CORPORATION et al., Defendants and Respondents.

358

**COUNSEL**

Larry J. Easterwood for Plaintiff and Appellant.

MacDonald, Halsted & Laybourne, Thomas S. Kidde and Terry B. Bates for Defendants and Respondents.

**OPINION**

**ARABIAN, Acting P. J.—**

### INTRODUCTION

Plaintiff Richard S. Anderson, Jr. (Anderson) appeals from the granting of summary judgment in favor of defendants Savin Corporation and various

Savin employees (collectively Savin). The trial court found that Anderson had failed to establish any triable issue of material fact as to various causes of action for wrongful discharge by Savin. We affirm.

## Factual and Procedural Background

Anderson was hired by Savin as a photocopier salesperson on May 19, 1978. In conjunction with his employment, he executed an employment letter describing his position and setting forth the provisions of his employment. (A complete copy of the complete employment letter is attached as Appendix I.) For purposes of this litigation, the crucial paragraph read as follows: "This arrangement shall become effective for a period of one year, commencing as of the date hereof, and shall be deemed renewed for an additional and successive one year periods thereafter, unless terminated by either party in its discretion at any time on 5-days' notice to the other. This arrangement, which is to governed by New York law, may not be modified except by written approval of a Savin officer; may not be assigned by you, and together with the Restrictive Covenant attached, and the latest Savin Compensation Plan, and the rules and guidelines pertaining to the Compensation Plan, is the entire arrangement between the parties. . . ."

Periodically thereafter, Anderson signed restrictive covenants, all of which stated in part that "[n]othing contained in this covenant shall confer on the undersigned any right to continue in the employment of Savin or to interfere in any way with the right of Savin to terminate the undersigned's employment at any time, with or without cause, without liability."

For approximately the next four years, Anderson successfully performed his duties for Savin. In August 1982, he expected to be promoted to a managerial position. Instead, he was terminated for making racially and sexually derogatory remarks to a Savin trainee. Several days later, Savin contacted Anderson by phone and letter indicating that his termination had not been finalized and he was to return, at least to cooperate in a further investigation of the trainee's complaint. Anderson refused to return since he had not been contacted by any Savin employee in his chain of command, and referred any future contact to his attorney. In December, Savin offered Anderson another sales position, which he rejected.

On April 22, 1983, Anderson filed suit against Savin and four Savin employees, setting forth seven causes of action: (1) wrongful termination; (2) conspiracy to wrongfully discharge; (3) breach of contract; (4) breach of covenant of good faith and fair dealing; (5) fraud; (6) conspiracy to intentionally inflict emotional distress; and (7) negligent infliction of emotional

distress. Savin answered and, on March 12, 1987, moved for summary judgment.

Savin submitted evidence in support of several theories barring recovery. Generally, Savin contended (1) New York law was determinative of Anderson's employment rights and precluded a cause of action for wrongful termination or breach of covenant of good faith and fair dealing, (2) Anderson had insufficient longevity to maintain an action for wrongful discharge, (3) the written agreement establishing an at-will employment superseded any oral representation of conflicting terms, (4) any oral representations were barred by the statute of frauds, (5) Anderson was terminated for good cause, and (6) he could not maintain any action for conspiracy between the corporation and its employees.

Anderson responded with his own declaration and other evidence that (1) when hired he had been told that Savin would retain him except for good cause, (2) he had performed successfully during his four-year tenure with Savin, (3) other individuals wanted him terminated to allow someone else to be given his promotion, and (4) he never made the derogatory remarks attributed to him. Anderson included a copy of Savin's Retail Branch Operating Procedure manual.

Anderson also filed a motion to amend his complaint to delete the conspiracy allegations and reassert certain causes of action naming only individual Savin defendants. Savin objected, claiming prejudice due to untimeliness and lack of good cause.

At the hearing on the motion for summary judgment, the trial court granted Savin's evidentiary objections to Anderson's declaration, and overruled Anderson's evidentiary objections to Savin's evidence. The court then granted summary judgment on all causes of action.

## ISSUE PRESENTED

The principle issue is whether New York law determines Anderson's employment rights and precludes an at-will employee from maintaining a cause of action for wrongful discharge.

## DISCUSSION

Recently, in *Zimmerman* v. *Allstate Ins. Co.* (1986) 179 Cal.App.3d 840 [224 Cal.Rptr. 917], this court articulated the legal principles relevant to a choice of law question: ▪ "Questions of choice of law are determined in California by the 'governmental interest analysis.' Under this approach, 'the

forum in a conflicts situation "must search to find the proper law to apply based upon the interests of the litigants and the involved states." ' (*Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 161 [ ], criticized on another ground in *I.J. Weinrot & Son, Inc.,* v. *Jackson* (1985) 40 Cal.3d 327, 337 [ ].)

"Under the governmental interest analysis ' "[w]hen one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied." ' (*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580 [ ]; see *Offshore Rental Co.* v. *Continental Oil Co., supra,* 22 Cal.3d at p. 163.) We therefore examine the laws of the involved states, and the governmental policies underlying the laws, ' "preparatory to assessing whether either or both states have an interest in applying their policy to the case." [Citation.] Only if each of the states involved has a "legitimate but conflicting interest in applying its own law" will we be confronted with a "true" conflicts case.' (*Offshore Rental Co.* v. *Continental Oil Co., supra,* 22 Cal.3d at p. 163, citing *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313, 319 [ ]; see also *Hernandez* v. *Burger* (1980) 102 Cal.App.3d 795, 799 [ ].)" (*Id.,* at pp. 844-845.)

Savin contended on summary judgment that the parties had an at-will employment agreement; and New York law, which governed its enforceability, precluded a cause of action for wrongful discharge, citing *Murphy* v. *American Home Products* (1983) 58 N.Y.2d 293 [448 N.E.2d 86]. Anderson countered that at the time of his hiring, Savin personnel verbally assured him of continued employment except for good cause; and its failure to abide by that promise entitled him to bring suit under California law since California has the more substantial interest in protecting employee rights.

On the facts of this case, however, we find no conflict between California and New York law governing the enforceability of an express at-will employment contract. Much of the difficulty in determining the relevant legal principles and their proper application results from a lack of attention to the distinctions and nuances of wrongful discharge law: "The opinions in a number of decisions addressing liability for 'wrongful discharge' have evinced some ambivalence, if not confusion, as to the legal basis for recovery, often discussing in the same case theories of implied contract, violation of public policy and breach of the covenant of good faith and fair dealing. [Citation.] No doubt part of the confusion is attributable to the undifferentiated use of the term 'wrongful discharge.' That term is so broad it is inadequate to distinguish between the possible theories and has on occasion, we believe, been indiscriminately applied to situations involving only breach of contract, situations involving a discharge in violation of a

fundamental public policy and situations involving breach of the implied covenant of good faith and fair dealing. It would be conducive to proper analysis if courts and lawyers used a different nomenclature to denominate these different situations in which liability is imposed after all on different legal theories. Appropriate nomenclature might be 'breach of employment contract' for the true breach of contract cases, 'tortious discharge' for the public policy cases and 'bad faith discharge' for the cases involving breach of the implied covenant of good faith and fair dealing." (*Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1163 [226 Cal.Rptr. 820].)

This case involves a simple breach of employment contract. When he began working for Savin, Anderson signed a document setting forth the "terms and conditions" of his tenure there. This document expressly stated that it constituted "the entire arrangement between the parties" and could "not be modified except by written approval . . . ." It further recited that Anderson was employed for a period of one year, renewable for additional one-year terms, but terminable "by either party in its discretion at any time on 5-days' notice . . . ." ██ ██ ██ The only other matters incorporated by reference were certain restrictive covenants, all of which provided that "[n]othing contained in this covenant shall confer upon [Anderson] any right to continue in the employment of Savin or to interfere in any way with the right of Savin to terminate [Anderson's] employment at any time, with or without cause, without liability."[1]

Under California law, Labor Code section 2922 expressly provides: "An employment, having no specified term, may be terminated at the will of either party on notice to the other. Employment for a specified term means employment for a period greater than one month.' [Citations.] "This statute creates a presumption that an employment contract is terminable at will. [Citation; fn. omitted.]" (*Hillsman* v. *Sutter Community Hospitals* (1984) 153 Cal.App.3d 743, 749 [200 Cal.Rptr. 605].) This presumption is rebuttable under either of two conditions: "(1) the contract was supported by consideration independent of the services to be performed by the employee for his prospective employer; or (2) the parties agreed, expressly or impliedly, that the employee could be terminated only for good cause." (*Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 326 [171 Cal.Rptr. 917].)

---

[1] Anderson suggests in passing that his failure to read the employment letter relieves him of the terms of the contract. "The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its explicit provisions are contrary to his intentions and understanding [citations]." (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 501 [86 Cal.Rptr. 744].) Moreover, Anderson did not seek rescission of the contract due to this misunderstanding. (See generally 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency & Employment, § 178, pp. 174-175.)

██ In this case neither of these conditions obtained. On the contrary, the only contractual relationship between the parties was explicitly and repeatedly conditioned on Savin's right to terminate Anderson at any time, with or without cause. We find the terms of the agreement created a valid express contract under which Anderson was an at-will employee. (See *Malmstrom* v. *Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 313-316 [231 Cal.Rptr. 820]; *Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 480-482 [199 Cal.Rptr. 613].)

Anderson countered that Savin made prior oral representations that he would be terminated only for good cause. However, "California law presumes a written contract supersedes all prior or contemporaneous oral agreements. (Civ. Code, § 1625; Code Civ. Proc., § 1856.) ██ ██ ██ ██ ██ Parol evidence is admissible to establish the terms of the complete agreement of the parties only if the written agreement is not the complete and final embodiment of that agreement. [Citation.]" (*Malmstrom* v. *Kaiser Aluminum & Chemical Corp., supra,* 187 Cal.App.3d at p. 314.)[2] Moreover, "[t]here cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results. [Citations.] Therefore, [Anderson's] allegations of an implied-in-fact contract for continuing employment and benefits [except for good cause] cannot rebut his status as an at-will employee." (*Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d at p. 482; see also *Malmstrom* v. *Kaiser Aluminum & Chemical Corp., supra,* 187 Cal.App.3d at p. 315.)

New York law provides for similar results regarding the enforceability of an express at-will employment agreement. (See *Sabetay* v. *Sterling Drug, Inc.* (1987) 69 N.Y.2d 329, 334-335 [506 N.E.2d 919]; see generally *Martin* v. *New York Life Ins.* (1895) 148 N.Y. 117 [42 N.E. 416]; but see *Weiner* v. *McGraw-Hill* (1982) 57 N.Y.2d 458 [443 N.E.2d 441, 33 A.L.R.4th 110].) Moreover, although that jurisdiction does not follow California with respect to "tortious discharge" (see *Murphy* v. *American Home Products Corp., supra,* 58 N.Y.2d at pp. 300-302 [448 N.E.2d 86]) or "bad faith discharge" (see *Sabetay* v. *Sterling Drug, Inc., supra,* 69 N.Y.2d at pp. 335-336 [506 N.E.2d 919]; see also *Murphy* v. *American Home Products Corp., supra,* 58

---

[2] On this issue the parties erroneously argue the applicability of the statute of frauds. Since, by its terms, the employment contract was a fully integrated document, any inconsistent oral representations were barred by the parol evidence rule not the statute of frauds. (See *Ellis* v. *Klaff* (1950) 96 Cal.App.2d 471, 476 [216 P.2d 15].)

For the same reason, Anderson's reliance on the contents of Savin's operating procedure manual is misplaced. The employment letter made no reference to the manual and did not incorporate any of its provisions. (See *Malmstrom* v. *Kaiser Aluminum & Chemical Corp., supra,* 187 Cal.App.3d at pp. 317-318; *Hillsman* v. *Sutter Community Hospitals, supra,* 153 Cal.App.3d at pp. 753-754.)

N.Y.2d at pp. 304-305 [448 N.E.2d 86]), Anderson raised no triable issue of material fact as to either of these species of wrongful termination.

■ A cause of action for tortious discharge requires a showing that the " 'employer's motivation for [a] discharge contravenes some substantial public policy principle . . . .' " (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 177 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].) Anderson made no claim nor did he offer evidence of any public policy violation by Savin in connection with his termination.

■ We also do not find that the facts support an action for breach of implied covenant of good faith and fair dealing. In *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158], "the California Supreme Court acknowledged, albeit somewhat tentatively, the validity of extending the tort of 'bad faith breach' to contracts outside those in the insurance field" if a case involves a relationship with "similar characteristics" to those found in insurance contracts. (*Wallis* v. *Superior Court* (1984) 160 Cal.App.3d 1109, 1116 [207 Cal.Rptr. 123].) ■ In *Wallis,* the court identified the following "similar characteristics": "(1) the contract must be such that the parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protecton; (3) ordinary contract damages are not adequate, because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party 'whole'; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability." (*Id.,* at p. 1118.)

■ Anderson's claim satisfied none of the foregoing criteria. Although in some respects the parties were in unequal bargaining positions, Anderson could have gone elsewhere to secure employment; he was not bound to accept Savin's terms at the risk of always being jobless. The employment contract clearly involved a profit motive for Anderson and, to the extent enforceable, ordinarily would provide for adequate damages in the event of a breach. In light of the express at-will conditions, Anderson could not reasonably assume that Savin would continue to employ him indefinitely except for good cause. For that reason, neither was he vulnerable nor did Savin have reason to anticipate any vulnerability. (See generally *id.,* at p. 1119; see also *Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250, 262-263 [215 Cal.Rptr. 860]; *Rulon-Miller* v. *International Business Machines Corp.* (1984) 162 Cal.App.3d 241, 252-253 [208 Cal.Rptr. 524].) Hence, even under the more expansive protection of California law, Anderson failed to substantiate a claim for wrongful discharge.

██ Under relevant substantive legal principles, the facts thus present no conflict between the law of the jurisdiction chosen by the parties and that of the forum state. Under such circumstances, California will apply the law of the foreign jurisdiction in conformance with the reasonable expectations of the parties. (*Gamer* v. *duPont Glore Forgan, Inc.* (1976) 65 Cal.App.3d 280, 287 [135 Cal.Rptr. 230].) As we have cited above, under New York law an express at-will employment contract is enforceable even if an employee is terminated without cause. (*Sabetay* v. *Sterling Drug, Inc., supra,* 69 N.Y.2d at pp. 334-335.) ██ ██ ██ ██ Accordingly, the trial court properly granted summary judgment.[3]

## DISPOSITION

The judgment is affirmed. Appellant to bear costs on appeal.

Croskey, J., and Luros, J.,* concurred.

---

[3] Anderson's complaint also contained counts for intentional and negligent infliction of emotional distress. On motion for summary judgment, he failed to substantiate either outrageous conduct by Savin (see *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497-498 [86 Cal.Rptr. 88, 468 P.2d 216]) or serious emotional disturbance (see *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 928-930 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]) necessary to maintain these actions. Thus, summary judgment properly dispensed with Anderson's tort claims as well.

Additionally, in light of our conclusions, the ruling on Anderson's motion to amend is moot.

* Assigned by the Chairperson of the Judicial Council.

## APPENDIX I.

EMPLOYMENT LETTER

TO: *Richard S. Anderson*

This will set forth the terms and conditions under which you will operate as sales representative for Savin Business Machines Corporation. The effective date of your employment is *5/15/78*. You will be paid on a basis of the commission schedule (which you have read and hereby acknowledge) set forth in the current Compensation Pla and any and all Compensation Plans thereafter.

Your territory will consist of the following areas:

*W-14*

It is understood that you agree to devote your entire business time and energies to th solicitation of orders for and the promotion of maximum sales of Savin Products for your territory. Savin reserves the right to change or redistrict your territory from time to time as deemed necessary by the corporation.

Commissions are earned when the merchandise is delivered, accepted and paid for by the customer. As a matter of practice, commissions are advanced when customers are invoic Unpaid accounts after 120 days are automatically charged back to you by commissions deductions. You are expected to bear all cost and expenses incurred in the solicitati of orders and performance of your duties. The commissions structure is so arranged to provide for this. Commissions due upon terminations or resignations are payable 90 days from date of termination or resignation.

Upon termination of your employment, however occasioned, the amount by which the total advances or payments made to you is not offset by your earned commissions shall be repayable by you immediately upon notification of this amount.

All orders obtained are subject to approval by Savin Branch or Home Offices. Savin is not liable for commissions, damages or otherwise, by reason of Savin's refusal or fail ure to make delivery against an order.

This arrangement shall become effective for a period of one year, commencing as of the date hereof, and shall be deemed renewed for an additional and successive one year periods thereafter, unless terminated by either party in its discretion at any time on 5-days' notice to the other. This arrangement, which is to be governed by New York law, may not be modified except by written approval of a Savin officer; may not be assigned by you, and together with the Restrictive Covenant attached, and the latest Savin Compensation Plan, and the rules and guidelines pertaining to the Compensation Plan, is the entire arrangement between the parties. You are not authorized to adjust accounts, give credit, or bind or commit Savin, in any manner except if specifically instructed by your supervisor.

This letter is subject to all terms and conditions set forth in the current Compensati Plan and the rules of Compensation governing that Plan, a copy of which you hereby certify having received, read, and understood to your full satisfaction, and is subjec to any new compensation Plans and Rules as may be published from time to time in the future.

ase sign this copy of this Employment Letter and attached Restrictive Convenant.
.. copy will remain with you, one with the Branch Office, and one will be returned to
vin Headquarters.

we congratulate you on your new assignment and wish you outstanding success.

Branch Manager

:epted: X *Richard L. Holycott,*

:e: X *May 22, 1518.*