Filed 4/9/21  Fei v. Wang CA6
Opinion following rehearing
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LANLAN FEI, | H045442 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 1-12-CV-217620) |
| v. | |
| HUASHAN WANG, | |
| Defendant, Cross-complainant and Appellant; | |
| BIN HE et al., | |
| Defendants and Appellants; | |
| LI YI, | |
| Cross-defendant and Respondent. | |

Li loaned money to Wang to purchase a home in the San Francisco Bay Area.[1] Wang failed to record a security interest in the home in favor of Li, sold the home during the pendency of this litigation, and transferred proceeds from the sale to foreign bank accounts.  The trial court entered judgment in favor of plaintiff Lanlan Fei (the assignee of Li's interest in the loan) for breach of contract, fraudulent conveyance, and unjust

---

[1] Li Yi and Yi Li are the same person.  We refer to him as Li, as did the trial court in its statement of decision.  Li is referred to as Yi Li in the operative complaint; he was sued by Wang as Li Yi, which is the name reflected in the judgment and therefore in our caption.

enrichment against Wang, Wang's wife (Bin He), and a company formed by the couple. Plaintiff was awarded $2,870,050 in damages, plus pre- and post-judgment interest. Defendants challenge the judgment as to fraudulent conveyance and damages for unjust enrichment. Wang also challenges the rejection of his cross-claim for breach of contract. For the reasons stated here, we will affirm the judgment.

## I.  BACKGROUND

Li is the board chairman and chief executive officer of Trony Solar Holding Co. Ltd. (Trony). After he personally approached Li about employment, in 2009 Wang was hired by a wholly owned Trony subsidiary (Shenzen Trony Science and Technology Development Co., Ltd.) as a regional director overseeing marketing, development, and sales in North America. Later that year, Wang entered into a new employment contract with Shenzhen Trony and relocated to China, while his family remained in Massachusetts.

Wang approached Li several times in 2010 for a loan to purchase a home in the San Francisco Bay Area. Wang told Li he had bad credit in the United States and could not purchase a home on his own. In 2011 Li extended a $2.2 million personal loan to Wang, conditioned on the purchased home serving as collateral for the loan. Wang and his wife, Bin He, set up two shell companies to facilitate the transaction—Perpetual Renewables Ltd. in the British Virgin Islands (Perpetual) and Bayside Health & Wealth LLC in California (Bayside). In April 2011, Li borrowed $2.2 million from J.P. Morgan using a $3 million life insurance policy as security. The money was wired to Perpetual and used by Bayside to purchase a home in Palo Alto for $1,955,000.

Wang did not inform Li that he had purchased the home. In May and June 2011 he told Li he was negotiating the purchase, and in July he reported to Li that his family had moved to California and was living in a rented property while the transaction was in process. In September 2011, Li discovered that Wang had purchased the home in April and his family was living in the home. Li confronted Wang, who agreed to return the

2

money loaned in excess of the purchase price and prepare formal documents securing the loan. Wang returned $200,000, and he paid Li interest on the loan through November 2011. But he did not secure the loan, even after Li prepared the legal documents for He's signature.

In December 2011 Li assigned his interest in the loan to plaintiff, who commenced this action in January 2012. Wang voluntarily resigned from Trony sometime in the summer or fall of 2012. In 2013, Bayside recorded a deed of trust signed by He, securing the home in favor of Perpetual for Bayside's purported $2.2 million indebtedness to Perpetual. The home was sold in 2014 for $2,825,000. Over $2.3 million from the sale proceeds was wired to a Perpetual bank account in China, and of the $405,597 received by Bayside, $200,000 was wired to a Canadian bank account.

The matter proceeded to a bench trial in 2016 on a fourth amended complaint,[2] and the court also considered Wang's cross-claim alleging Li provided the money for Wang's home purchase as an inducement to continue his employment with Trony, but later repudiated the agreement.

In a 54-page statement of decision, the court found Li's testimony "to be completely credible," and the testimony of Wang and He to be "self-serving and almost completely not credible." The court found Wang and He each to be alter egos of Bayside and Perpetual, and each responsible for the breach of contact. The court found Li and Wang had entered into an oral contract for Li to lend Wang $2.2 million to be used by

---

[2] The operative complaint alleged breach of contract against Wang and He (first cause of action); fraud (false promise) against Wang, He, and Bayside (second cause of action); fraud (negligent misrepresentation) against Wang (third cause of action); common counts against Wang, He, and Bayside (fourth cause of action); fraudulent conveyance against Wang and Bayside (fifth cause of action); promissory estoppel against Wang and He (sixth cause of action); and unjust enrichment against Wang, He, and Bayside (seventh cause of action). Perpetual was named as a defendant in the second fourth, fifth, and seventh causes of action, but the court did not address Perpetual's liability because a default had been entered against Perpetual before trial commenced.

Wang to buy a home in the Bay Area using Li's credit with J.P. Morgan. Wang agreed to provide the home as collateral for the loan, to pay the actual interest accrued by Li on the J.P. Morgan line of credit, and to repay the principal in full immediately upon selling the home from the proceeds of the sale.

The court found Wang breached the contract by failing to record Li's security interest in the home, and by selling the home without repaying Li. The court found Wang and Bayside fraudulently conveyed the proceeds of the sale to Perpetual and Bayside with the intent to hinder, delay, and defraud Li. And the court found Wang, He, and Bayside were unjustly enriched to the extent they benefited from the sale of the home. Plaintiff was awarded the $2 million principal balance remaining on the loan, the $870,050 gain realized from the sale of the home, and pre-and post-judgment interest.

The trial court did not reach plaintiff's alternative common counts and promissory estoppel causes of action; it rejected plaintiff's false promise cause of action for failure to prove fraudulent intent at the time Li and Wang orally agreed upon the terms of the loan; and it rejected the negligent misrepresentation cause of action because it was based on alleged false promises, not factual misrepresentation. The court found Wang failed to prove his cross-claim for breach of contract.

## II. DISCUSSION

### A. FRAUDULENT CONVEYANCE

Defendants argue Wang and Bayside were found liable for fraudulent conveyance based on an unpleaded legal theory. Plaintiff amended the complaint to add fraudulent conveyance and judicial foreclosure causes of action after learning of the 2013 deed of trust in favor of Perpetual. Plaintiff alleged the deed of trust was a fraudulent conveyance under the Uniform Voidable Transactions Act (Civ. Code, § 3439 et seq.; the Act) as it was executed to avoid Li's security interest and deprive Li of the legal remedy of judicial foreclosure. Plaintiff sought remedies under the Act and other relief deemed appropriate.

4

Plaintiff further amended the complaint after learning the home had been sold. She withdrew a judicial foreclosure cause of action and added a cause of action for unjust enrichment, alleging the property had been sold to a third party in 2014 at a substantial profit. She did not amend the fraudulent conveyance claim (except she no longer sought as remedies an attachment against the home or the appointment of a receiver to take charge of the property).

Based on the trial evidence, plaintiff argued in her closing trial brief that Perpetual was controlled by Wang, Wang recorded Perpetual's deed of trust before selling the home, Wang concealed the deed of trust from Li, and Perpetual absconded with the sale proceeds. Responding to defendants' argument that the cause of action was moot because the deed of trust had been superseded by the sale, plaintiff clarified in her rebuttal brief that the fraudulent conveyance claim encompassed the improper transfer of the sale proceeds to an offshore account which was inaccessible to Li and rendered Wang insolvent. In closing argument, plaintiff asserted that the Perpetual deed of trust was the mechanism for the ultimate fraudulent transfer of the sale proceeds. The trial court agreed that the deed of trust was used to defraud plaintiff: "Huashan Wang and Bayside recorded a security interest in favor of Perpetual on the property after this case had been filed. Mr. Wang and Bayside then used that recorded interest as the mechanism for the fraudulent transfer, by presenting a demand for payment on behalf of Perpetual and then fraudulently transferring most of the proceeds of the sale, $2,315,362, out of the country and beyond the jurisdiction of this Court and this suit, to Perpetual." The trial court also found $200,000 from the sale proceeds transferred to a Canadian bank account by Bayside was a fraudulent conveyance.

Defendants argue the trial court erred in adopting an unpleaded theory of recovery, observing the rule that claims involving fraud must be pleaded with specificity. While that is a well-established rule of pleading, it is not the basis for reversal after a trial on the merits. To the extent defendants challenge the variance between the operative complaint

5

and the trial court's fraudulent conveyance finding, they have failed to show reversable error. Code of Civil Procedure section 469 states, "Variance between the allegation in a pleading and the proof shall not be deemed material, unless it has actually misled the adverse party to his or her prejudice in maintaining his or her action or defense on the merits." Defendants were on notice from the operative complaint that the cause of action for fraudulent conveyance encompassed more than an allegation "that the deed of trust would hinder efforts to foreclose on the property," as defendants argue. The complaint alleged that Wang, Bayside, and Perpetual engaged in transactions "to protect the Subject Property (from Li)"; Perpetual "was merely a conduit through which the [loan] funds passed"; Perpetual was never "out-of-pocket" money because the funds used to purchase the home belonged to Li; and the deed of trust "was executed for no other reason than to avoid the legal obligation owed to Li." The complaint alleged that Bayside "purposefully encumbered the [home] so as to negate Plaintiff's ability to recover on the $2.2 [million] promissory note, or her ability to recover [by foreclosure]." Plaintiff sought as a remedy "a constructive trust over the [home] or any proceeds from the past or future sale or further transfer of the [home]," or any other relief deemed appropriate. The complaint thus alleged with specificity that defendants recorded the deed of trust during the pendency of the lawsuit so as to avoid the legal obligation Wang owed to Li, and to prevent plaintiff from recovering on behalf of Li. The constructive trust plaintiff sought over proceeds from a past or future sale of the home anticipated that the home could be sold and the deed of trust used to facilitate transfer of the sales proceeds to a person or entity other than plaintiff.

Defendants were put on further notice through briefing and argument to the trial court that plaintiff's theory of liability for fraudulent conveyance included the transfer of proceeds secured by Perpetual's deed of trust out of the country. Indeed, an extensive colloquy ensued during closing arguments in which plaintiff clarified her theory that "the recording of the deed of trust in favor of Perpetual … was part of the fraudulent scheme

6

to have the money disappear," and that the deed of trust was the legal instrument which allowed the funds to transfer out of escrow. Defendants addressed that theory on the merits; they did not argue they had been misled to their prejudice in responding to that cause of action.

Even if plaintiff's theory of liability (and the evidence supporting that theory) were seen as varying from the cause of action as pleaded, defendants have failed to establish reversible error. They did not argue in the trial court nor do they argue in this court that they were misled and would have offered additional or different evidence in defense of the fraudulent conveyance claim. (*Colbert v. Colbert* (1946) 28 Cal.2d 276, 281 [no trial court error "in finding according to the evidence in spite of the alleged limited scope of the pleading" where "there is no variance between the allegations in the pleading and the proof which misled the appellant to his prejudice"]; *Thompson v. Hickman* (1948) 89 Cal.App.2d 356, 358 ["Where a matter has been treated as in issue at the trial and a finding made upon that issue, the [operative] complaint becomes immaterial"].) No miscarriage of justice has been shown. (Cal. Const., art. VI., § 13 ["No judgment shall be set aside … for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].)

We recognize the trial court's finding regarding a fraudulent $200,000 transfer to Canada was not encompassed by the fraudulent conveyance cause of action as pleaded; nor did plaintiff at any time seek to have the $200,000 transfer serve as the basis for liability. However, the finding has no impact on the fraudulent conveyance related to the deed of trust, the $2 million damages award based on that fraudulent conveyance, or the ultimate judgment. The gratuitous finding constitutes harmless error.

Defendants argue the fraudulent conveyance ruling was erroneous because plaintiff did not show her legal remedy was inadequate, citing *Mehrtash v. Mehrtash*

7

(2001) 93 Cal.App.4th 75. They have confused liability under the Uniform Fraudulent Transactions Act with remedies available under the Act. The plaintiff in *Mehrtash* sought to set aside the defendant's quit claim deed to third parties as a fraudulent transaction. (*Id*. at p. 77.) The court in *Mehrtash* noted the equitable principle that "a plaintiff seeking the equitable relief of setting aside a transfer of property must show entitlement to relief and inadequacy of a remedy at law." (*Id*. at p. 80.) But plaintiff did not seek to set aside the sale of the Palo Alto home, nor did the court provide her with any equitable relief. The trial court found Wang made a fraudulent conveyance under Civil Code section 3439.04, subdivision (a)(1), and plaintiff was awarded the legal remedy of $2 million in damages, consistent with Civil Code section 3439.08, subdivision (b)(1). The damages did not "add [] an additional sum to a legal recovery, i.e., making the legal recovery larger," as defendants argue. The causes of action for breach of contract and fraudulent conveyance are independent bases for the same $2 million damages award.

Defendants argue the transfer of sale proceeds to Bayside and Perpetual was not fraudulent because Bayside owned the home (and was thus the rightful recipient of sale proceeds), and Perpetual held a promissory note against the proceeds. The trial court did not find Bayside's receipt of sale proceeds to be fraudulent. The trial court found Perpetual was a shell company controlled by Wang, and Perpetual's deed of trust was used to transfer the sale proceeds beyond the court's jurisdiction during the pendency of the trial with actual intent to hinder, delay, or defraud plaintiff. Substantial evidence in the record supports the trial court's findings regarding Perpetual, and defendants have therefore failed to show error. (*Whiteley v. Philip Morris, Inc.* (2004) 117 Cal.App.4th 635, 678 [" 'the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact' "].)

8

## B. UNJUST ENRICHMENT

The trial court found defendants were unjustly enriched by selling the home for over $2.8 million and transferring the bulk of the proceeds overseas to accounts under their control. It awarded as restitution the $870,050 difference between the loan amount and the sale price of the home. The court expressly rejected as not credible He's testimony that Wang sold the home to take advantage of increasing property values, finding instead that the home was sold solely "to convert [the] property into proceeds that could then be transferred out of the country before this case was resolved and before Mr. Li obtained his judgment for [defendants'] debt."

Unjust enrichment is an equitable remedy synonymous with restitution. (*Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370.) Its object "is to eliminate profit from wrongdoing" (Rest. 3d Restitution and Unjust Enrichment, § 51(4)), and it is appropriate "where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." (*Durell*, at p. 1370; *McBride v. Boughton* (2004) 123 Cal.App.4th 379, 388.) Restitution is grounded in " 'obligations created by law for reasons of justice.' " (*Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 794.) Thus, " '[w]here "a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss … but nevertheless the enrichment of the defendant would be unjust[,] the defendant may be under a duty to give the plaintiff the amount by which [the defendant] has been enriched." ' " (*American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1482.) " '[P]ublic policy … does not permit one to "take advantage of his own wrong" regardless of whether the other party suffers actual damage.' " (*County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 542.)

Defendants argue the trial court's finding of an enforceable contract for repayment of money precludes a recovery for unjust enrichment as a matter of law. Indeed, the general rule in California is that "a quasi-contract action for unjust enrichment does not lie where … express binding agreements exist and define the parties' rights." (*California*

9

*Medical Assn v. Aetna U.S. Healthcare of California, Inc.* (2001) 94 Cal.App.4th 151, 172; accord *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1388 [quasi-contract recovery not available "if the parties have an enforceable agreement regarding a particular subject matter"]; *Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419 [" 'where the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability' "].) But by selling the home solely to place the loan proceeds beyond the court's jurisdiction, as found by the trial court, defendants gained $870,050 in real estate appreciation at the expense of Li. We see no error in characterizing that gain as unjust enrichment. Defendants are liable to plaintiff because they profited through deceitful and fraudulent conduct. Further, the parties did not bargain for defendants' wrongful appropriation and conversion of the loan collateral. Thus, the unjust enrichment award is not encompassed by or contrary to the parties' agreement. (*Hillsman v. Sutter Community Hospitals* (1984) 153 Cal.App.3d 743 [a covenant will not be implied against the express terms of the contract].)

## C.  CROSS-COMPLAINT

Wang cross-complained against Li for breach of contract, alleging Li provided funds for Wang to purchase a home to induce Wang to continue to provide services to Trony. According to the cross-complaint, Wang and Li agreed Wang would not have to repay any money if his services were terminated by Li; Wang would be required to repay apportioned unforgiven funds if he voluntarily terminated his relationship with Trony; Wang fully performed under the agreement; and Li breached the agreement by repudiation. Wang argues Li breached the agreement by failing to provide him future venture opportunities as set forth in a private understanding memo admitted in evidence, resulting in the failure of a condition precedent to Wang having to repay the money.

In ruling that Wang failed to prove his breach of contract cause of action, the trial court noted Wang's concession that his claim was based solely on an oral contract and

10

that it "does not find that there were any terms of the oral agreement … other than those the Court has found in connection with plaintiff's cause of action for breach of contract." The trial court rejected Wang's attempt to impose additional terms on the oral contract by emailing them in a private understanding memo which it found Li did not read at the time. In addition, the court found Wang's testimony that Li had identified specific Trony ventures which would provide equity returns to repay the loan "to be completely not credible." It further credited Li's explanation that such terms involving Trony would not have been part of the agreement because the oral contract was a private loan agreement unrelated to Wang's employment relationship with Trony.

Where, as here, "the issue on appeal turns on the failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) The trier of fact is the exclusive judge of the credibility of the evidence and can reject evidence as unworthy of credence. (*Oldenburg v. Sears, Roebuck & Co.* (1957) 152 Cal.App.2d 733, 742.) Wang's evidence was both contradicted and found not credible. The evidence therefore does not compel a finding that Li breached the parties' agreement.

### III. DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

_____

Grover, J.

WE CONCUR:

_____

Greenwood, P. J.

_____

Elia, J.

H045442 - *Fei v. Wang et al.*