[Civ. No. 36373. First Dist., Div. Two. Feb. 6, 1976.]

YVONNE RABAGO-ALVAREZ, Plaintiff and Appellant, v. DART INDUSTRIES, INC., Defendant and Appellant.

**COUNSEL**

Zenk & Buckwalter and Kenneth D. Buckwalter for Defendant and Appellant.

Fullerton, Lang, Richert & Patch and Jeff Wall for Plaintiff and Appellant.

**OPINION**

**ROUSE, J.**—Plaintiff Yvonne Rabago-Alvarez brought suit against defendant Dart Industries, Inc. to recover damages for wrongful termination of her employment.

The evidence produced at the trial shows that in 1971, just prior to the commencement of her employment with defendant, plaintiff was employed in the direct selling of copper gift ware. Plaintiff had engaged in this occupation for 16 years and had at all times worked for the same man, Charles Collis. During those 16 years, plaintiff had developed a great degree of skill in using a "party plan" sales technique whereby homemakers were encouraged to invite their friends to parties where a

salesperson would demonstrate a particular product. Plaintiff earned a gross income of $12,000 per year from this employment.

In 1971, Vanda Beauty Counsellor (hereafter "Vanda"), a division of defendant Dart Industries, Inc., assigned a distributor named Pamela Cardell to investigate "party plan" selling and to determine whether it would be a good method of selling Vanda's cosmetics. In November 1971, Mrs. Cardell attended a party where plaintiff was selling copper gift ware. Mrs. Cardell found plaintiff's performance outstanding, and she was convinced that plaintiff's knowledge and talent at "party plan" sales were the best she had ever seen. Mrs. Cardell so advised her husband, Emery Cardell, who was employed by Vanda as a regional manager. Mrs. Cardell was then thinking of resigning from her employment with Vanda, and she felt that plaintiff would make an excellent replacement for her.

Immediately after her first meeting with plaintiff, Mrs. Cardell asked her if she would be interested in coming to work for Vanda. Plaintiff replied that she was not at all interested, that she had worked for Mr. Collis for many years and that she had no desire to leave his employment.

Mrs. Cardell subsequently introduced plaintiff to her husband, and both the Cardells urged plaintiff to come to work for Vanda. Initially, Mr. Cardell offered plaintiff a salary of $7,500 a year, but she told him that she was not interested since she was already earning $12,000 per year.

On January 6, 1972, plaintiff attended a luncheon meeting with the Cardells, and Mr. Cardell then offered to start her at a yearly salary of $9,000. Mr. Cardell offered her the job of area sales manager, and he told her that he was in charge of raises and that her salary would probably increase to $12,000 within three years. He also told her that in the meantime, if her performance was good, she would receive annual bonuses of $2,000 or $3,000. Plaintiff told the Cardells that she had worked for the same employer for 16 years and that she was not in the least interested in a position which might prove to be only temporary. She expressed her fear that Vanda might hire her for the purpose of learning her "party plan" sales techniques and then dismiss her after she had taught these techniques to the Vanda personnel. Mr. Cardell assured plaintiff that he was offering her a permanent position as long as her work efforts were satisfactory.

Plaintiff then asked to meet with other Vanda management personnel with higher authority than Mr. Cardell. Mr. Cardell arranged such a meeting and introduced plaintiff to Fred Gress, the personnel director for Vanda, and two other Vanda executives. Plaintiff told Mr. Gress of her long tenure with her present employer, and she stated that her primary concern was that the position at Vanda be permanent. Mr. Gress assured plaintiff that, if her performance was as represented by Mr. Cardell, she would be with Vanda as long as the company remained in existence. He further stated that even if Vanda were to go out of business, there were other direct selling companies owned by Dart where plaintiff could work. Mr. Cardell assured plaintiff that she would never be terminated arbitrarily, but only if there was good cause for termination, in that she had failed to perform her work functions and assignments.

Plaintiff finally agreed to accept employment with Vanda, and she became an area sales manager in January 1972. In March 1972, Mr. Cardell was dismissed from his employment with Vanda and was replaced by James Rebal. Mr. Rebal testified that he found plaintiff to be an extremely hard working person who always had the best interests of her distributors at heart. Nevertheless, in February 1973, Mr. Rebal terminated plaintiff's employment with Vanda, purportedly for her lack of administrative management.

Plaintiff and another witness, Carolee Cave, testified to an incident which took place in the summer of 1972, when Mr. Rebal had taken plaintiff and Mr. and Mrs. Cave to view some topless and bottomless entertainment. Plaintiff and Mrs. Cave insisted upon leaving, and Mr. Rebal was angry. He told plaintiff that she was prudish and unbusiness-like and that she should be willing to accompany the male distributors wherever they wished to go. Plaintiff expressed her disagreement with Mr. Rebal's views. According to plaintiff, her relationship with Mr. Rebal was definitely altered as a result of this incident, and from that point on, he continually criticized her and "picked on" her for matters which had nothing to do with the proper performance of her duties.

The trial court concluded that Dart had breached its agreement with plaintiff by wrongfully terminating her employment and that plaintiff had not breached her employment agreement with defendant company.

Judgment was entered awarding plaintiff damages in the amount of $16,653.63. Plaintiff and defendant both filed notices of appeal therefrom.

On its appeal from the judgment, defendant Dart Industries, Inc. contends that the trial court erred in determining that plaintiff's employment contract could be terminated only for good cause. Defendant attacks both the court's finding that plaintiff's employment agreement was supported by consideration independent of the personal services to be performed by her and the finding that it was expressly and impliedly agreed that she could be terminated only for good cause. Defendant contends that plaintiff's employment agreement was such that she could be terminated at will or, at least, for good cause if her employer was in good faith dissatisfied with her performance. Defendant asserts that the evidence established as a matter of law that plaintiff's supervisor, Mr. Rebal, terminated her employment because of his good faith dissatisfaction with her performance. We find no merit in defendant's contentions.

■ It is settled that contracts of employment in California are terminable only for good cause if either of two conditions exist: (1) the contract was supported by consideration independent of the services to be performed by the employee for his prospective employer; or (2) the parties agreed, expressly or impliedly, that the employee could be terminated only for good cause.

In *Millsap* v. *National Funding Corp.* (1943) 57 Cal.App.2d 772, 776 [135 P.2d 407], the court held that the giving up of other employment could furnish sufficient consideration for a promise of permanent employment. The court stated, "Where the prospective employee clearly states to his prospective employer . . . that he will not give up his present employment unless the prospective employer will agree to give him permanent employment and the prospective employer expressly agrees to those terms, it seems clear that the prospective employee (to paraphrase the language of section 1605 Civil Code) in giving up his present employment suffers a prejudice as an inducement to the promisor for his promise of permanent employment."

In *Drzewiecki* v. *H & R Block, Inc.* (1972) 24 Cal.App.3d 695, 704 [101 Cal.Rptr. 169], the court held that "a contract for permanent employment, whether or not it is based upon some consideration other than the employee's services, cannot be terminated at the will of the employer if it contains an express or implied condition to the contrary. [Citations]."

Here, the trial court found that both of these conditions had been fulfilled, and the evidence furnishes ample support for such findings.

Plaintiff was at all times insistent upon a contract of permanent employment, and she was extremely hesitant to leave her longterm employment as a seller of copper gift ware. She agreed to do so only because defendant's representatives promised her permanent employment and assured her that she would not be discharged arbitrarily but only for good cause.

*Ferreyra* v. *E. & J. Gallo Winery* (1964) 231 Cal.App.2d 426 [41 Cal.Rptr. 819], and *Levy* v. *Bellmar Enterprises* (1966) 241 Cal.App.2d 686 [50 Cal.Rptr. 842], upon which defendant relies, are readily distinguishable from the case at bar. Although the plaintiffs in each of those cases did give up their present employment when they went to work for the defendants, there was a lack of any evidence that the plaintiffs had ever told the defendants that they would not give up their present employment without a promise of permanent employment or that the defendants had agreed to any such terms.

Since, in this instance, the defendant was not entitled to discharge plaintiff without good cause, there is no merit to defendant's contention that it was entitled to discharge plaintiff if it was in good faith dissatisfied with her performance. Even if this were the case, the trial court found, as a matter of fact, that Mr. Rebal was not in good faith dissatisfied with plaintiff's performance of her job and that he terminated her employment solely because of his personal dislike of plaintiff. This finding is amply supported by the evidence pertaining to the topless-bottomless entertainment incident and the subsequent alteration of Rebal's behavior toward plaintiff.

In her cross-appeal plaintiff raises but one issue, namely, that the amount of damages awarded to her was inadequate. The trial court determined that four years from the date of plaintiff's termination by defendant was a reasonable period for the duration of plaintiff's agreed employment by defendant. The court further found that plaintiff would have received $9,000 per year during her employment with defendant, for a total of $36,000 for the four-year period, and that she was also entitled to recover unreimbursed business expenses in the amount of $335.63. The court also found that plaintiff had earned $1,682 in other employment after she was terminated by defendant and that by accepting such "minimal" employment, plaintiff had waived her right not to seek or accept employment which was more menial or otherwise not comparable or substantially equal to her employment with defendant. The court determined that plaintiff's damages were thus mitigated

in the first year following her termination in the amount of her actual earnings, i.e., $1,682. The court further found that, for the succeeding three years, plaintiff "has or will have" the capacity to earn $400 per month in the second year, $500 per month in the third year, and $600 per month in the fourth year. The court deducted all of these potential earnings from the $36,335.63 which plaintiff would have been entitled to receive under her employment contract with defendant.

Plaintiff concedes that the trial court was entitled to deduct her actual earnings, but asserts that the court erred in its arithmetic and that she actually earned a total of $1,482 rather than $1,682. Plaintiff further contends that she was under no duty to accept employment which was more menial than her position with defendant; further, that there is no rule of law that the acceptance of such employment could result in a waiver of her right to decline such employment and recover, instead, her full contractual damages against defendant.

In reply to these arguments, defendant concedes that the trial court's arithmetic was incorrect and that plaintiff's actual earnings following her termination by defendant amounted to only $1,482. Defendant has not sought to justify the trial court's finding that, following her termination by defendant, plaintiff's acceptance of more menial employment resulted in a waiver of her right to decline to accept such employment. Instead, defendant asserts that plaintiff's ability to find suitable employment was a factual question for the trial court and that its determination should not be disturbed on appeal. However, defendant has failed to point to any evidence in the record which suggests that there was available to plaintiff any employment reasonably comparable to her position with defendant.

In *Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181-182 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615], our Supreme Court held that "The general rule is that the measure of recovery by a wrongfully discharged employee is the amount of salary agreed upon for the period of service, less the amount which the employer affirmatively proves the employee has earned or with reasonable effort might have earned from other employment. [Citations.] However, before projected earnings from other employment opportunities not sought or accepted by the discharged employee can be applied in mitigation, the employer must show that the other employment was comparable, or substantially similar, to that of which the employee has been deprived; the employee's rejection of or failure to seek other available employment of a different

or inferior kind may not be resorted to in order to mitigate damages. [Citations.]" (To the same effect, see *California School Employees Assn.* v. *Personnel Commission* (1973) 30 Cal.App.3d 241, 250 [106 Cal.Rptr. 283].)

Here, the record contains no evidence that plaintiff could obtain any employment comparable to her position with defendant. In fact, plaintiff testified to the contrary, and described her efforts to obtain such employment and her lack of success. She explained that her former job as a seller of copper gift ware was no longer available to her and that if she returned to that firm, she would have to "start at the bottom" in a vastly inferior position.

In view of this uncontradicted evidence, it appears that the trial court based its deductions for plaintiff's projected earnings solely upon its finding that, having once accepted menial, inferior employment, plaintiff had waived her right to decline to accept such employment in the future. This finding is not supported either by the decisional law of this state or by basic principles of fairness.

It has been held that unemployment payments received by a wrongfully discharged employee may not be deducted from the amount recovered against the employer because such payments are intended only to alleviate the distress of unemployment and not to diminish the amount which the employer must pay as damages. (*Billetter* v. *Posell* (1949) 94 Cal.App.2d 858, 860 [211 P.2d 621].) Plaintiff asserts that the same rule should apply to earnings from menial employment and contends that she should not be penalized for obtaining a menial part-time job while seeking substitute employment similar in quality to that denied her by the wrongful termination.

We agree with plaintiff's contention. To impose any other rule would militate against the mitigation of damages and result in the imposition of greater damages against employers. It would also result in senselessly penalizing an employee who, either because of an honest desire to work or a lack of financial resources, is willing to take whatever employment he can find. Thus, we conclude that the trial court should not have deducted from plaintiff's recovery against defendant the amount that the court found she might have earned in employment which was substantially inferior to her position with defendant.

The judgment is modified by increasing the principal amount of the damages awarded to plaintiff to the sum of $34,853.63 ($36,335.63 less her actual earnings in the amount of $1,482). As so modified, the judgment is affirmed.

Plaintiff to recover her costs on appeal.

Taylor, P. J., and Kane, J., concurred.