[No. H002936. Sixth Dist. Mar. 28, 1989.]

E. ROBERT McLAIN, Plaintiff and Respondent, v.
GREAT AMERICAN INSURANCE COMPANIES et al.,
Defendants and Appellants.

COUNSEL

Kalvin M. Grove, Paul R. Garry, Michael A. Paull, Fox & Grove, J. Victor Waye and McCutchen, Doyle, Brown & Enersen for Defendants and Appellants.

Susan R. Reischl, Robert L. Mezzetti and Robert M. Tobin for Plaintiff and Respondent.

OPINION

ELIA, J.—This is an action for wrongful termination of employment brought by respondent E. Robert McLain against appellants Great American Insurance Companies, Great American West, Inc., American Financial Corporation, Rose Ann Herman and Kemper Eakle. The jury returned a general verdict for McLain and awarded him $62,000 in compensatory damages. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

In 1984, McLain was employed with an independent adjusting firm in San Jose. In February 1984, McLain was assigned to temporarily work in

the Great American offices in Walnut Creek. While working in Walnut Creek, McLain became friendly with Don Kustaborder, a division manager of Great American. Kustaborder told McLain he needed two specialists and apprised McLain of employment opportunities available with Great American. Kustaborder emphasized that Great American was one of the highest paying companies in the industry and had a lucrative bonus package for its managers.

McLain was content with his $40,000 salary at the independent adjusting firm but was attracted by Kustaborder's description of the opportunities available with Great American and because Great American was a large, national company. Kustaborder said several Great American offices would soon be consolidated and McLain would have a good chance of becoming the casualty claims manager in the consolidated office. Kustaborder also said that if McLain was employed by Great American he would be on probation for 90 days and then become a "permanent" employee.

Within a few days, McLain and Kustaborder agreed that McLain would join Great American. McLain agreed to reduce his salary to $30,000 based upon Kustaborder's representations of long-term advancement possibilities.

Before McLain starting working for Great American, he was given an application form to complete and was told that it was needed for his personnel file. The form required McLain to provide information regarding his employment and educational background. The form did not specify McLain's position or salary at Great American. At the bottom of the form was an area marked "For Company Use Only." This portion of the application was never signed or filled in by Great American.

On the back page of the application form was the following provision: "In consideration of my employment, I agree to conform to the rules and regulations of the GREAT AMERICAN INSURANCE COMPANY, and I agree that my employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of either the GREAT AMERICAN INSURANCE COMPANY or myself. I also understand and agree that the terms and conditions of my employment may be changed, with or without cause, and with or without notice, at any time by the GREAT AMERICAN INSURANCE COMPANY. I understand that no representative of the GREAT AMERICAN INSURANCE COMPANY, has any authority to enter into an agreement for any specified period of time, or to make any agreement contrary to the foregoing." McLain signed the form a few lines below this clause and returned the form to Great American. McLain testified that he never read the clause and that no one from Great American ever pointed it out or discussed it with him.

On April 2, 1984, McLain started working as a litigation specialist for Great American in its Walnut Creek office. That same day his employment was confirmed in a letter which stated his salary, his position and various benefits. A "New Employee Checklist" was also distributed and signed by McLain as acknowledgment that McLain had been advised of certain Great American benefits and policies.

A June 1984 probationary review commended McLain's job knowledge and capabilities and recommended managerial advancement. In October 1984, the Walnut Creek, San Jose and Sacramento offices of Great American were consolidated in San Jose. McLain was made casualty claims manager of the newly consolidated San Jose office. McLain's salary was raised to $34,000 and then to $36,000 in January 1985. By July 1985, McLain was earning $38,000 and had favorable reviews about the quality of his work performance.

In October 1985, McLain was terminated by Great American. At trial, appellants contended that McLain was terminated for "insubordination" because he distributed a confidential memo. McLain, however, claimed his discharge was without good cause and in retaliation for his complaints about the management style of appellant Rose Ann Herman. The evidence surrounding McLain's termination reveals the following circumstances.

Appellant Rose Ann Herman was claims manager and McLain's immediate supervisor at the San Jose office. She was widely known among employees as "the Dragon Lady" of Great American. She was merciless in her dealings with subordinate employees, given to racial epithets and quick to ridicule. The record is replete with evidence of Herman's abusive and intimidating conduct toward Great American employees. For example, in 1985, Herman fired a Black claims representative and announced "You can take the girl out of the ghetto, but you can't take the ghetto out of the girl." Herman, in her testimony, admitted this statement.

Great American employee Patrick Rains also had a confrontation with Herman. At trial, Rains testified that Herman berated Rains over a form he had completed. Herman called the form "garbage," tore it up, threw it at him and then stated "wipe that smirk off your face or I'll slap it off." There was testimony that Herman told the workers' compensation group at Great American that she had never worked with more unprofessional people and that the employees' work stations were such a mess that she was surprised that they did not have body lice. At least two Great American employees quit as a result of "the lice incident."

There was an abundance of other testimony regarding incidents between Herman and Great American employees. Robert Marshall, an administra-

tive manager, and Jackie Waite, a personnel administrative supervisor, both testified that people were leaving Great American because of Herman's behavior. There was additional evidence that McLain's subordinates complained to McLain about the standards imposed by Herman and also complained that Herman's language and conduct were abusive. Although Herman may have felt misunderstood, it is unlikely that the jury was reminded of Ralph Waldo Emerson's observation "to be great is to be misunderstood" when they considered this evidence.

McLain was concerned about the effect of Herman's behavior on employees under his supervision. McLain was also worried that he would be held responsible for the employee turnover. In August 1985, McLain spoke with Marshall about Herman's conduct and her criticism of employees under McLain's supervision. Marshall suggested that McLain discuss the matter with appellant Kemper Eakle, the San Jose branch manager. McLain met with Eakle, described the problems and was assured that their conversation would remain confidential. McLain then spoke to Herman and asked her to refrain from criticizing his employees outside of his presence. Later that same day, McLain was called to Eakle's office, along with Herman and Marshall. Eakle advised Herman and McLain to resolve their differences. Shortly thereafter, Herman sent a handwritten memo to Eakle describing both her and McLain's positions. At the end of the memo, Herman wrote "I apologize for handwriting this but due to its delicate nature, I did not believe it to be prudent to dictate this."

Herman's memo contained statements regarding certain punitive actions to be taken if employees did not perform satisfactorily. After receiving a copy of the memo, McLain called in three employees and read them the portion relating to Herman's expectations. One of those employees asked McLain for a copy of the memo. McLain refused to turn it over. McLain testified that he did not give anyone a copy of the memo.

In October 1985, McLain was called to Eakle's office. Herman and Marshall were present. Eakle accused McLain of distributing Herman's memo and calling Eakle an "idiot" and a "traitor" for trying to work out the differences between McLain and Herman. McLain denied the charges and asked to confront his accusers. Eakle, however, told McLain that an investigation had already been conducted and that McLain was being terminated for insubordination.

McLain then brought this action alleging seven causes of action. These were (1) wrongful termination; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) violation of civil rights; (5) intentional infliction of emotional distress; (6) negligent infliction of

emotional distress; and (7) wrongful termination based upon violation of public policy. The appellants' motion for a directed verdict was granted as to the fourth and seventh claims.

The jury found in favor of McLain and awarded him $62,000 in compensatory damages. The judgment was entered on a general verdict. ■ It is settled that "[w]here several counts or issues are tried, a general verdict will not be disturbed by an appellate court if a single one of such counts or issues is supported by substantial evidence and is unaffected by error, . . ." (*Posz v. Burchell* (1962) 209 Cal.App.2d 324, 335-336 [25 Cal.Rptr. 896]; see also *Gillespie* v. *Rawlings* (1957) 49 Cal.2d 359, 368-369 [317 P.2d 601].) Based upon this rule, we must assume that the jury found on the cause of action which is supported by substantial evidence and is free of error. (*McCloud* v. *Roy Riegels Chemicals* (1971) 20 Cal.App.3d 928, 936 [97 Cal.Rptr. 910].)

We find that the breach of contract claim supports the verdict. We therefore do not address appellants' arguments based on the other causes of actions.

## DISCUSSION

■ McLain contends that appellants breached an implied contract that he would only be terminated for cause. ■ Appellants, on the other hand, argue that the employment application specifically provided that McLain could be terminated with or without cause. Appellants urge that the application was an integrated contract and that admitting evidence regarding a cause for termination requirement violated the parol evidence rule.

■ The parol evidence rule prohibits the introduction of extrinsic evidence to vary or contradict the terms of an integrated written instrument. (Code Civ. Proc., § 1856.) It is based upon the notion that the written instrument *is* the agreement of the parties. (*Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11, 22-23 [92 Cal.Rptr. 704, 480 P.2d 320].) ■ The application of the parol evidence rule involves a two-part analysis. First, the court must determine whether the writing was intended to be an integration, i.e., a complete and final expression of the parties' agreement which precludes evidence of collateral agreements. (*Masterson* v. *Sine* (1968) 68 Cal.2d 222, 225 [65 Cal.Rptr. 545, 436 P.2d 561].) Second, the court must consider whether the agreement is susceptible of the meaning urged by the party offering the evidence. (*Pacific Gas & E.Co.* v. *G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].)

We first determine whether the application form was an integrated contract. In addressing this issue, we must consider such factors as "the language and completeness of the written agreement and whether it contains an integration clause, the terms of the alleged oral agreement and whether they contradict those in writing, whether the oral agreement might naturally be made as a separate agreement, and whether the jury might be misled by the introduction of parol testimony." (*Mobil Oil Corp.* v. *Rossi,* (1982) 138 Cal.App.3d 256, 266 [187 Cal.Rptr. 845]; *Brawthen* v. *H & R Block, Inc.* (1975) 52 Cal.App.3d 139, 146 [124 Cal.Rptr. 845].) We must also consider the circumstances surrounding the transaction and its subject matter, nature and object. (*Mobil Oil Corp.* v. *Rossi, supra,* 138 Cal.App.3d at p. 266.)

In *Gerdlund* v. *Electronic Dispensers International* (1987) 190 Cal.App.3d 263 [235 Cal.Rptr. 279], the court analyzed a written employment contract to determine whether it was a fully integrated document. The contract provided in pertinent part "This agreement shall be effective until thirty (30) days after notice of termination given by either party. Notice of termination may be given by either party at any time and for any reason . . . [¶] This agreement contains the entire agreement between the Company and the Representative. There are no oral or collateral agreements of any kind. . . ." (*Id.* at p. 268.)

The court decided that the contract was integrated. First, the court pointed out the agreement itself contained an integration clause. Second, the court stressed that the employee had actually helped draft the written agreement, including the termination provision. Third, the court stated that the agreement was not a formalized document. To the contrary, the agreement was six pages long and seemingly covered all aspects of the employment relationship. Finally, the court emphasized that the language "for any reason" precluded a separate collateral agreement regarding reasons for termination. (190 Cal.App.3d at pp. 271-272.)

Similarly, in *Anderson* v. *Savin Corp.* (1988) 206 Cal.App.3d 356 [254 Cal.Rptr. 627], the court examined a written contract signed by the employee at the beginning of his employment. The contract expressly provided that it constituted the "entire arrangement between the parties" and could "not be modified except by written approval" and incorporated a covenant providing that nothing could " 'interfere in any way with the right of Savin to terminate the undersigned's employment at any time, with or without cause, without liability.' " (*Id.* at p. 360.) Based upon these express provisions, the court rejected the employee's claim of an implied contract requiring cause for termination. (*Id.* at p. 364.)

■ The factors emphasized in *Gerdlund* and *Anderson* are conspicuously absent here. For example, the application signed by McLain does not contain an integration clause but in fact provides that the terms and conditions of employment "may be changed, with or without cause, and with or without notice, at any time by the GREAT AMERICAN INSURANCE COMPANY." This language not only suggests that the application was *not* integrated, but also indicates that the parties specifically intended their relationship to remain subject to change in terms and conditions.

In addition, the application was a standardized two-page form. In *Brawthen v. H & R Block, Inc.* (1972) 28 Cal.App.3d 131 [104 Cal.Rptr. 486], the court concluded that a written employment agreement was not integrated and emphasized that the contract "consisted of a fully utilized two-page singlespaced mimeographed form with blank spaces provided for the date, the 'managers' name, and the subject 'city.' It was not readily adaptable to erasure, or new matter, or changes in its text." (*Id.* at pp. 138-139.) The Great American application contains most of these same features. Unlike the contract in *Gerdlund,* the Great American application was brief, did not cover either McLain's salary or position and consisted of a preprinted form drafted solely by Great American. In fact, McLain did not receive written verification of his salary or position until after he started working for Great American.

Finally, McLain's claim that he could only be terminated for cause does not flatly contradict the terms of the application. Although the application states that McLain could be terminated "with or without cause," it also provides that the terms of McLain's employment could be changed at any time. This language strips the "with or without cause" provision of its force. If the terms of McLain's employment could be changed, then it is conceivable that there was an implied contract that McLain could only be discharged for cause. We therefore cannot say that the implied contract is plainly inconsistent with the provisions of the Great American application. The application does state that Great American could not enter into an agreement "contrary to the foregoing." However, this language seems to contradict the provision providing that the agreement could be changed and therefore appears to be ambiguous and confusing. Because the application was a standardized form, did not cover several key aspects of the employment relationship and because it expressly stated that the terms and conditions of employment could be changed, we conclude that it was not an integrated document. Parol evidence was therefore admissible to establish the complete agreement between Great American and McLain. (*Brawthen v. H & R Block, Inc.,* supra, 28 Cal.App.3d at p. 137.)

■ Even if we were to conclude that the application was integrated, the parol evidence would still be admissible. As stated in *Pacific Gas & E. Co.* v.

*G.W. Thomas Drayage etc. Co., supra,* 69 Cal.2d at p. 37: "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." As previously pointed out, the language that the terms of McLain's employment could be changed demonstrates that the Great American application is "reasonably susceptible" to the interpretation urged by McLain.

 Having determined that parol evidence was admissible, we next consider whether that evidence supports the jury's verdict. We first address the evidence supporting the existence of an implied contract requiring cause for termination.

 In *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373], the court discussed the factors which could be used to establish the existence of an implied contract. The court stressed that "factors apart from consideration and express terms may be used to ascertain the existence and content of an employment agreement, including 'the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged.'" (*Id.* at p. 680, quoting *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 327 [171 Cal.Rptr. 917].) In addition, the court reasoned that "the totality of the circumstances determines the nature of the contract. Agreement may be ' "shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances." ' " (*Id.* at p. 681, quoting *Pugh, supra,* 116 Cal.App.3d at p. 329.) With these guidelines in mind, we next turn to the evidence presented by McLain.

McLain introduced the following evidence to establish that there was an implied contract that he could only be terminated for cause. First, McLain contended that the Great American personnel manual demonstrated that cause was required before Great American could discharge its employees. The manual states that "new hires during their initial three months may be terminated for cause, providing they have received written warning . . . ." It also states that employees may be dismissed for excessive absences, tardiness or poor performance provided that the "proper warning/probation procedures" are taken. The manual provides that an employee may be dismissed, without warning, for misconduct such as drinking or drug use on the job, dishonesty or insubordination. Involuntary termination is "also appropriate as an initial response to a very serious job-related offense committed by an employee which demonstrates that his or her untrustworth-

iness, jeopardizes the safety of individuals, the security of property or the reputation of the Company."

The testimony of two Great American employees also suggests that McLain could not be terminated without cause. Robert Marshall, an administrative manager at Great American, testified that McLain was a permanent salaried employee who was entitled to be terminated only for cause. Marshall also testified that complaining about upper management did not constitute "cause." Jackie Waite, the personnel administrative supervisor, testified that she knew of no instance where the at-will clause was ever invoked to terminate someone.

Finally, McLain testified that he left the independent adjusting firm based upon Kustaborder's promises of long-term advancement possibilities coupled with the assurance that McLain would be a permanent employee once the 90-day probationary period ended. Based upon the foregoing, we conclude that there was substantial evidence to establish an implied contract that McLain could only be terminated for cause.

■ There was also substantial evidence to support the jury's finding *that appellants breached the implied contract. McLain introduced evidence that his discharge stemmed from his complaints about the behavior of appellant Herman. McLain also established that he did not distribute Herman's memo. In addition, there is evidence that Great American used the memo incident as a pretext to fire McLain. Finally, there was evidence of McLain's superior performance while employed at Great American. In sum, there was substantial evidence to support the jury's verdict that appellants did not have cause to discharge McLain and therefore breached the implied contract.

■ A final issue is appellants' claim that the trial court committed error by admitting evidence regarding Herman's behavior but excluding evidence regarding certain behavior on the part of McLain. Appellants sought to introduce evidence regarding McLain's sexual preferences and conduct. Section 352 of the Evidence Code gives the trial court the discretion to exclude prejudicial, confusing and misleading evidence. McLain's behavior was totally irrelevant to his termination. Indeed, at the motion *in limine* hearing, appellants admitted that they could not offer any evidence that McLain's sexual behavior contributed to his discharge. On the other hand, Herman's conduct was directly at issue since McLain contended that his complaints about her behavior led to his termination. Accordingly, we conclude that the trial court did not abuse its discretion by excluding appellants' evidence.

The judgment is affirmed.

Capaccioli, Acting P. J., and Cottle, J., concurred.