892 F.2d 85
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
VICTORIA SAVINGS ASSOCIATION, Plaintiff-Appellant,
v.
Bert H. BONANNO; Bonnie J. Bonanno; Bank of California, a
Corporation, Defendants-Appellees.
 No. 88-2826.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 1989.
Decided Dec. 11, 1989.
 
 Before JAMES R. BROWNING, CYNTHIA HOLCOMB HALL and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Victoria Savings Association ("Victoria") appeals the district court's summary judgment in favor of Bert and Bonnie Bonanno (collectively, "the Bonannos"). While the Bonannos owned Statewide City Mortgage Corporation ("Statewide"), Statewide made 240 loans to a developer, which loans were purchased by the Federal National Mortgage Association ("FNMA"). The Bonannos sold Statewide to Victoria and the loans defaulted. Victoria settled the loans with the FNMA, but the Bonannos refused to indemnify Victoria, based on their interpretation of their sales agreement with Victoria. Victoria filed this action against the Bonannos. Exercising diversity jurisdiction, the district court granted the Bonannos' motion for summary judgment. A timely appeal followed. We affirm.
 
 STANDARD OF REVIEW
 
 3
 We review grants of summary judgment de novo. Gabrielson v. Montgomery Ward & Co., 785 F.2d 762, 764 (9th Cir.1986). The moving party must show that no genuine issue as to any material fact remains for trial and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see also Gabrielson, 785 F.2d at 764. Once the moving party meets that burden, Federal Rule 56(e) requires that the adverse party show "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).
 
 DISCUSSION
 
 4
 The indemnity and approval clauses (provisions 13.1 and 13.2 respectively) contained in the Bonannos' agreement with Victoria provide as follows:
 
 
 5
 13.1 Seller to Indemnify Buyer. Seller does hereby agree to indemnify Buyer and hold it harmless of and from any and all loss, costs, damage, liability, or expense, including attorney's fees, arising from ... any claims, demands, causes of action, or suits arising from or relating to Seller's conduct or settlement of litigation or claims, whether before or after the Closing Date, whether or not Buyer knows of such matter upon the execution hereof....
 
 
 6
 13.2 Seller to control litigation. Buyer agrees to ... allow Statewide [sic] to continue to defend ... litigation to the extent that the claims raised thereunder are subject to this indemnity agreement ..., and Buyer shall not settle or compromise any such litigation ... without the express approval of Seller.
 
 
 7
 I. Indemnity conditioned on releasing control of the litigation
 
 
 8
 Victoria contends that Victoria's right to indemnity is not conditioned on releasing control of the litigation to the Bonannos, because no language explicitly creates a condition precedent and the implication of such conditions is disfavored by law.
 
 
 9
 We do not need to imply a condition precedent in this case. The approval clause expressly applies to "litigation to the extent that the claims raised thereunder are subject to this indemnity agreement." Thus, since Victoria seeks indemnity for its settlement, the approval clause required it to seek the Bonannos' approval.
 
 
 10
 This result is not unreasonable, as Victoria argues. Assuming Victoria tendered control of the litigation to the Bonannos, the indemnity clause would make the Bonannos liable for any expenses resulting from the litigation, including an award in excess of a previous settlement offer.
 
 
 11
 Victoria argues there is a factual issue that it tendered control of the litigation to the Bonannos, fulfilling the condition precedent. Victoria contends that by informing Rosenthal of the negotiations and by allowing Rosenthal to make the opening statement at the May 27 meeting with the FNMA, there was an effective tender of control.
 
 
 12
 Victoria fails to raise a triable issue regarding its tender of the litigation to the Bonannos. The facts, as presented by Victoria, show that the Bonannos were excluded from the initial negotiations, and asked to stay out. The fact that Rosenthal made the first comments in the negotiations at the May 27 meeting is not significant, considering Victoria very soon thereafter made a larger settlement offer without Rosenthal's approval.
 
 
 13
 Even if Victoria failed to tender control of the litigation to the Bonannos, it argues that the Bonannos cannot use the failure as a defense to Victoria's action for indemnity. Victoria cites Clemmer v. Hartford Ins. Co., 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098 (1979), where an injured party sued an insurer on the policy after obtaining a judgment against the insured. The California Supreme Court held that the insurer could not defend by asserting the insured's failure to tender its defense to the insurer, unless the insurer could show prejudice. Prejudice is shown by proof "that [the insurer] would have defended the action if there had been notice and tender." Id. at 883, 151 Cal.Rptr. at 294, 587 P.2d at 1107. Victoria claims the rule applies here, and that the Bonannos have not shown prejudice.
 
 
 14
 Victoria fails to show how Clemmer applies. The Clemmer court found it significant that the right of the injured party to sue an insurer after obtaining judgment against the insured is guaranteed by statute. Id. at 882, 151 Cal.Rptr. at 294, 587 P.2d at 1107. Here, however, Victoria's right would be purely contractual, and the same social policy concerns that motivate shifting the burden of showing prejudice to the insurer do not necessarily apply. Assuming the Clemmer rule applied, the Bonannos showed prejudice, as a matter of law. Rosenthal wrote a letter to Victoria the day after the May 27 meeting reiterating the Bonannos' rejection of the settlement, and expressing the desire to negotiate further or litigate. If the Bonannos cannot produce more evidence of their willingness to assume control of the litigation, this is due to the fact that Victoria settled the claims without the Bonannos' consent after Rosenthal left the meeting.
 
 
 15
 II. "Claims" and "Litigation"
 
 
 16
 There is no merit to Victoria's argument that the Bonannos' right of approval did not arise because the settlement here is not a settlement pursuant to litigation, but rather the settlement of a claim. In his declaration, Gene Cammarota testified that "[a]t no time was it my understanding ... that there was intended to be or, in fact, was any difference in the meaning between the terms 'litigation' and 'claims', as set forth in Section 13 of the agreement." Another declaration by Bert Bonanno is to the same effect. It was not error to allow this evidence. See Pacific Gas and Elec. Co. v. G.W. Thomas Drayage Etc. Co., 69 Cal.2d 33, 37, 69 Cal.Rptr. 561, 564, 442 P.2d 641, 644 (1968) ("The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible."); accord McLain v. Great Am. Ins., 256 Cal.Rptr. 863, 868-69 (1989). The record does not reveal a single specific fact supporting Victoria's interpretation of the meaning of the terms at issue.
 
 III. Covenant of Good Faith and Fair Dealing
 
 17
 It is not disputed that California law implies a covenant of good faith and fair dealing in every contract. The covenant requires that neither party deprive the other of the benefits of the agreement. Seaman's Direct Buying Service v. Standard Oil Co., 36 Cal.3d 752, 768, 206 Cal.Rptr. 354, 362, 686 P.2d 1158, 1166 (1984).
 
 
 18
 Victoria claims that the offer to settle the dispute with the FNMA for $425,000 was reasonable, and that it was a breach of the covenant for the Bonannos not to accept it. We disagree. The Bonannos' refusal to settle did not deprive Victoria of any benefit of the bargain. The bargain required the Bonannos to indemnify Victoria for expenses from claims, demands, or settlement thereof, provided Victoria tendered control of the litigation to the Bonannos. There is no evidence Victoria allowed the Bonannos to control the litigation. Thus Victoria, not the Bonannos, deprived itself of the right to indemnity.
 
 
 19
 Rosenthal opened the May 27 meeting with the FNMA by offering $150,000 in settlement for the Kwett claim. After the FNMA initially rejected the offer, Victoria offered $375,000, without Rosenthal's approval. Rosenthal then told Victoria that the Bonannos would not contribute more than $100,000 to any settlement. Victoria argues on appeal that, given their intention to only contribute $100,000, the Bonannos' settlement offer for $150,000 breached the covenant of good faith and fair dealing.
 
 
 20
 Rosenthal's settlement offer does not constitute a specific fact tending to establish a triable issue that the Bonannos breached the covenant. Victoria's bad faith claim amounts to saying that Victoria's unauthorized settlement was for a larger amount than some other unauthorized settlement would have been, absent Rosenthal's initial settlement offer. The dispositive fact is that Victoria's settlement was unauthorized in any event. By failing to tender control of the litigation to the Bonannos, Victoria did not become entitled to any indemnity for its settlement. Thus, the Bonannos could not have deprived Victoria of the benefit of the bargain in bad faith, as a matter of law.
 
 
 21
 IV. Victoria's right to the Bonannos' settlement offer
 
 
 22
 Victoria argues that it raises a triable issue that the Bonannos approved a $150,000 settlement offer, or alternatively, a $350,000 offer, and that Victoria became entitled to those monies. No evidence in the record suggests that the Bonannos did anything other than offer an amount in settlement. There is also no evidence suggesting that Victoria accepted the offer. Victoria, therefore, raises no triable issue that it is entitled to any contribution from the Bonannos towards the settlement.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3