James **JENKINS**, Plaintiff,

v.

**EASTERN CAPITAL CORPORATION,
dba Fitness U.S.A. Health Spas,
Defendant.**

**No. C 93–1171 FMS.**

United States District Court,
N.D. California.

March 17, 1994.

Joseph P. Stretch, Joseph P. Stretch Law Offices, San Francisco, CA, for plaintiff.

Robert A. Dolinko, Epstein Becker & Green, San Francisco, CA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FERN M. SMITH, District Judge.

### ISSUE

This case presents the question whether an agreement stating that employment was to be at will was an integrated contract that precluded proof of a prior implied agreement to terminate only for cause. For the reasons discussed herein, the Court holds that there was an integrated agreement of at-will employment and accordingly grants defendant's motion for summary judgment.

### INTRODUCTION

In his complaint, plaintiff stated three causes of action: breach of contract, breach

of the covenant of good faith and fair dealing, and discrimination in violation of the California Fair Employment and Housing act. (*See* Complaint ¶¶ 7–21.) By order dated December 2, 1993, the Court dismissed plaintiff's third cause of action with prejudice. Defendant now moves for summary judgment on plaintiff's remaining causes of action.

### BACKGROUND [1]

Defendant is a corporation which operates four fitness centers in the San Francisco Bay Area. One of its spas is in Daly City (the "Serramonte facility"). Defendant has some affiliation with Detroit Health Corporation, which operates fitness centers in Michigan.[2]

In August, 1983, plaintiff began working for Detroit Health Corporation. He held a number of different positions with that organization, the last of which was as area supervisor. In that capacity, he was responsible for overseeing several spas in the Detroit area. In 1988, plaintiff was given the opportunity to move to California and take a position as general manager of defendant's Serramonte facility. The position entailed a step down in responsibility, but it offered the potential for increased earnings through commissions. Plaintiff's ultimate supervisor, Stephen Anderson, initially offered him the position on a three-month trial basis. When plaintiff responded that he would only accept the position on a permanent basis, Anderson agreed.

After having accepted the position and moved to California, plaintiff signed a two-page document that was labelled "Application for Work." (*See* Gross Decl., Ex. A1.) At the beginning of the document, plaintiff's name and the date "12/88" were written. The subsequent sections requesting information were all crossed out. At the end of the document plaintiff's signature and the date "12/88" appear twice, in each instance immediately following statements concerning the terms of employment. The first such section provides, in pertinent part:

1. The facts recounted in this section are either without dispute or taken from plaintiff's submissions.

2. The parties dispute the precise nature of this affiliation, which in any event is not relevant to this motion.

I certify that the information contained in this application is correct to the best of my knowledge and understand that any misrepresentation or omission of information requested on this form is grounds for immediate dismissal ... I understand that this company operates up to 14 hours per day, up to 7 days per week, and that weekend work, overtime, changes of schedule and location may be required during my employment. *Further, I understand that my employment is for no definite period and may,* regardless of the date of payment of my wages and salary, *be terminated at any time without any previous notice, with or without cause.* In consideration of my employment, I agree to conform to all rules, regulations and policies of this company. *No modification of these statements shall be valid unless written and signed by the Company President.* *Id.* (emphasis added). The final section, captioned "Employment Applicant Agreement" in large capitals, provides, in relevant part:

I, the undersigned, understand that I am being considered as a potential employee of Eastern Capital Corp. dba Fitness USA Health Spas (the "Company"), and hereby certify that:

1. I understand that if I am hired, such hiring will not be for any definite period of time. Even though, if hired, I will be paid my wages on a monthly, semi-monthly, or weekly basis, I understand that this does not mean I am being hired for a definite period of time.

2. I understand that if hired, I will be an employee *at-will* and I can be terminated at any time, with or without cause, with or without notice ...

3. I understand that this agreement cannot be changed except in a written document signed by me and the Company President.

4. I have been given an opportunity to ask questions regarding Company rules and my potential status as an employee-at-will. No representative of Fitness USA Health Spas has made any promises or other statements to me which imply that I will be employed under any other terms than stated above.

5. I understand that if hired, this Statement is part of the employment arrangement between the Company and me, and will be binding on me.

*Id.* (emphasis in original). Plaintiff read at least some of the agreement before signing it. (*See* Stretch Decl., Ex. A, 164:15–21.) He believed that his signature on the agreement was required to enable him to receive pay. (*See* Opp. 5:20–22.) Plaintiff did not sign any subsequent agreements modifying the terms of the "application."

On June 27, 1991, defendant terminated plaintiff's employment because plaintiff was allegedly unable to motivate his employees or generate sales. (*See* Stretch Decl., Ex. A–2.) Plaintiff subsequently brought this suit.

Plaintiff's case depends largely upon his allegation that he had an implied agreement with defendant that his employment could be terminated only for good cause. Several factors are alleged to have given rise to this agreement. The Company Employee Policies, which plaintiff received upon commencing employment with Detroit Health Corporation in 1983, list different kinds of conduct for which summary termination is prescribed. (*See* Stretch Decl., Ex. A–20.) The employee training manual, which plaintiff received at some point during his employment in Detroit, contains a preliminary statement entitled "Outline for Progress." (*See* Stretch Decl., Ex. A 158:3–22.) This statement informs employees that "[y]ou will control your success with this Company by the amount of effort you put forth to learn these duties and responsibilities ... It's 100% up to you." (Stretch Decl., Ex. E.) Stephen Anderson assured plaintiff, as a condition of his accepting the California position, that his employment in California would be "permanent." (Stretch Decl., Ex. D, ¶ 4.) Finally, the 1991 termination letter requires the manager to "check off [the] reason for termination" and to explain the reason *"fully."* (*See* Stretch Decl., Ex. A–2.) Plaintiff submits that the document's requirement of a reason for termination shows that termination was required to be for cause. (*See* Opp. 4:21–5:1.)

## DISCUSSION

### I. The Summary Judgment Standard

In order to withstand a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. Fed.R.Civ.P. 56(e) (West 1992). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In the absence of such facts, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In opposing summary judgment, plaintiff is not entitled to rely on the allegations of his complaint. *See* Fed.R.Civ.P. 56(e) (West 1992). Section 56 provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against [him]." Fed.R.Civ.P. 56(e) (West 1992).

### II. The Alleged Implied Agreement to Terminate Only for Cause

#### A. Presumption of At–Will Employment

■ The California Court of Appeal has observed that "all employment termination cases begin with the presumption of at-will employment." *Harden v. Maybelline Sales Corp.*, 230 Cal.App.3d 1550, 1554, 282 Cal. Rptr. 96 (1991). This presumption arises from Labor Code section 2922, which provides, in pertinent part: "An employment, having no specified term, may be terminated at the will of either party on notice to the other." Cal.Labor Code § 2922 (West 1989). The statutory presumption of at-will employment can be superceded by a contract, express or implied, limiting the employer's ability to discharge an employee.[3] *Wilkerson v. Wells Fargo Bank*, 212 Cal.App.3d 1217, 1225, 261 Cal.Rptr. 185 (1989). A contract to terminate only for good cause may arise in one of two situations: (1) where the parties agree, either expressly or impliedly, that employment is only terminable for good cause or (2) where the parties agree that employment shall be on a "permanent" basis, and the contract is supported by consideration "independent of the services to be performed by the employee for his prospective employer." *Rabago–Alvarez v. Dart Industries, Inc.*, 55 Cal.App.3d 91, 96, 127 Cal.Rptr. 222 (1976); *Ferreyra v. E. & J. Gallo Winery*, 231 Cal.App.2d 426, 41 Cal.Rptr. 819 (1965); *Millsap v. National Funding Corporation of California*, 57 Cal.App.2d 772, 135 P.2d 407 (1943).

#### B. The December, 1988, Agreement

■ Where a plaintiff alleges the existence of an implied agreement to terminate only for good cause, California law[4] prescribes a two-step analysis.[5] *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal.App.3d 467, 199 Cal.Rptr. 613 (1984) (citing *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 329, 171

---

3. Where the presumption is reinforced by an express written agreement, however, some California cases have held that the express agreement cannot be superceded by an implied contract. *See Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 680 n. 23, 254 Cal.Rptr. 211, 765 P.2d 373 (1988); *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal.App.3d 467, 199 Cal.Rptr. 613 (1984), *disapproved on other grounds by Foley*, 47 Cal.3d at 688, 254 Cal.Rptr. 211, 765 P.2d 373; *but see Wagner v. Glendale Adventist Medical Center*, 216 Cal.App.3d 1379, 1388, 265 Cal.Rptr. 412 (1989); *DeHorney v. Bank of America National Trust and Savings Ass'n*, 879 F.2d 459, 466–67 (9th Cir.1989).

4. Both parties rely on California law; thus, the Court assumes that California law governs the case.

5. The two steps seem to be merely an application of the summary judgment standard, with the first inquiry essentially determining whether the plaintiff has presented sufficient evidence to support a jury finding of an implied contract under the second inquiry.

Cal.Rptr. 917 (1981)), *disapproved on other grounds by Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 688, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). First, the Court "must determine whether plaintiff can overcome the presumption of 'at-will' status by showing an implied term of the contract to the contrary." *Shapiro*, 152 Cal.App.3d at 481, 199 Cal.Rptr. 613. If plaintiff succeeds in rebutting the presumption, the finder of fact may consider a variety of factors to determine whether there was an implied contract to terminate only for good cause.[6] *Id.*

■ Where there is an integrated agreement between the parties that employment is terminable at will, plaintiff may not rely on parol evidence to establish the existence of a prior or contemporaneous agreement to terminate only for cause.[7] *E.g., Slivinsky v. Watkins–Johnson Co.*, 221 Cal.App.3d 799, 804–06, 270 Cal.Rptr. 585 (1990). Before reaching the question whether the parties' express agreement is integrated, however, the Court must decide whether there is such an express contract in the first instance.[8]

### 1. The 1988 Agreement Was a Contract

■ In the present case, the document alleged to have given rise to an express agreement of at-will employment is a form captioned "Application for Work." (*See* Gross Decl.Ex. A2.) Plaintiff signed the document after he was hired to work at the Serramonte facility. (Opp. at 10:10–12.) The application portion of the agreement has been left blank, with scratches marked in the spaces for information on the applicant's education, employment history, and other personal information. Plaintiff's name and the

date "12/88" appear on the first line of the application, and his signature, also dated "12/88," appears in two places at the end of the application. Immediately preceding plaintiff's first signature is the following language: "I understand that my employment is for no definite period and may ... be terminated at any time without any previous notice, with or without cause ... No modification of these statements shall be valid unless written and signed by the Company President." *Id.* Following plaintiff's first signature is a section entitled "Employment Applicant Agreement," which provides in relevant part as follows:

I ... hereby certify that:

1. I understand that if I am hired, such hiring will not be for any definite period of time. Even though, if hired, I will be paid my wages on a monthly, semi-monthly, or weekly basis, I understand that this does not mean I am being hired for a definite period of time.

2. I understand that if hired, I will be an employee *at-will* and I can be terminated at any time, with or without cause, with or without notice ...

3. I understand that this agreement cannot be changed except in a written document signed by me and the Company President.

4. I have been given an opportunity to ask questions regarding Company rules and my potential status as an employee-at-will. No representative of Fitness USA Health Spas has made any promises or other statements to me which imply that I will be employed under any other terms than stated above.

---

6. These factors include the duration of plaintiff's employment; the commendations and promotions he received; the apparent lack of any direct criticism of his work, the assurances that he was given that his future would be secure if he was loyal and did a good job; and the employer's practice of not terminating employees without good cause. *Shapiro*, 152 Cal.App. at 481, 199 Cal.Rptr. 613 (citing *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981)). Alternatively, under the second strand of *Rabago–Alvarez*, the trier of fact may consider whether plaintiff received a promise of permanent employment in exchange for his provision of "independent consideration," such as accepting a de-

motion and moving across country. *See Rabago–Alvarez*, 55 Cal.App.3d at 96, 127 Cal.Rptr. 222.

7. Indeed, some California cases have held that such an express written agreement cannot be superceded even by a subsequent implied agreement to terminate only for good cause. *See supra* note 3.

8. The parties in the present case have largely ignored the question whether the December, 1988, document constituted a contract between the parties, focusing their arguments instead on the question of integration and whether plaintiff's hiring in California constituted a transfer.

5. I understand that if hired, this Statement is part of the employment arrangement between the Company and me, and will be binding on me.

*Id.* (emphasis in original). Plaintiff's second signature and the date "12/88" appear immediately below this section of the document.

There is a conflict of authority in California on the question whether an employment application can constitute a contract of employment. In *Gianaculas v. Trans World Airlines, Inc.*, 761 F.2d 1391 (9th Cir.1985), the Ninth Circuit held that it could. That case involved a claim by terminated employees that their discharges, following substantial periods of employment, contravened the procedures set forth in the Management Policy and Procedure Manual ("MP & P"). Before commencing employment with TWA, each employee had completed an employment application which stated, in pertinent part, "[i]f given employment, I hereby agree that such employment may be terminated by the company at any time without advance notice and without liability to me for wages or salary...." 761 F.2d at 1393. The court construed California law to hold that these applications constituted express agreements of at-will employment which could not be overridden by any implied contract alleged to have arisen from the MP & P. *Wagner v. Glendale Adventist Medical Center*, 216 Cal. App.3d 1379, 265 Cal.Rptr. 412 (1989), also took the view that at-will language in an employment application could give rise to an express agreement of at-will employment. The application in *Wagner* contained a statement that, "I understand that if am employed, ... the employment may be terminated by either party at will upon two weeks' notice to the other." 216 Cal.App.3d at 1383, 265 Cal.Rptr. 412. The court held that the language created a contract that employment was to be terminable at will.

In *Harden v. Maybelline Sales Corp.*, 230 Cal.App.3d 1550, 1555, 282 Cal.Rptr. 96 (1991), by contrast, the court held that an employment application was a "mere solicitation of an offer of employment," and not itself a contract. In that case, plaintiff had signed an employment application which provided that employment was to be at will.

Subsequently, defendant sent plaintiff a formal written offer of employment which described plaintiff's position and benefits. The letter contained no at-will language and did not reference the employment application. Plaintiff signed and returned the letter. During plaintiff's employment, defendant's management employees were alleged to have represented to plaintiff that he would have a long term of employment with defendant and that defendant could only terminate employees for cause. On this set of facts, the court of appeal reversed the trial court's grant of summary judgment, finding that the application did not give rise to an agreement of at-will employment and that plaintiff had presented sufficient evidence to rebut the statutory presumption of at-will employment, creating a triable issue of fact.

The "application" in the present case did constitute an employment agreement. In view of the holdings of both *Gianaculas* and *Wagner*, an agreement in an employment application can give rise to a contract of employment, particularly where, as here, the language of the application states that it is intended to become a part of the employment agreement. (*See* Gross Decl.Ex. A2.) This factor distinguishes the application in the present case from that at issue in *Harden*. Moreover, plaintiff here did not sign a subsequent employment agreement, a factor which the court in *Harden* emphasized. (*See* Gross Decl., Ex. A, 163:21–164:2; Stretch Decl., Ex. A, 158:23–159:1.)

The Court's conclusion that the December, 1988, application was contractual in nature is reinforced by the fact that, contrary to *Harden*, plaintiff had already been hired at the time that he signed the "application." (Opp. at 10:10–12.) The timing of the agreement indicates that the document was not a genuine application for work but rather a convenient, though perhaps ill-chosen, form on which the parties could express their agreement as to a few critical terms of the employment relationship. The timing also removes any concerns that might otherwise have arisen as to whether the applicant sufficiently appreciated the commitment into which he was entering.

■ Plaintiff tries to avoid the consequences of the employment agreement by arguing that he believed that his signature on the form was required as a "formality to enable him to receive payment for his work." (Opp. 5:20–22.) It is a general principle of contract law that one "who signs a written agreement generally is bound by its terms, even though he neither reads it nor considers the legal consequences of signing it." *Operating Engineers Pension Trust v. Gilliam,* 737 F.2d 1501, 1504 (9th Cir.1984). This rule has been qualified by the proposition that one "who signs a document reasonably believing it is something quite different than it is cannot be bound to the terms of the document." 737 F.2d at 1504. A party who can show that he justifiably believed that the nature of his act in signing a document was something entirely different from what it actually was may have a contractual defense of fraud in the execution. *See, e.g., Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 774 (9th Cir.1986); *Gilliam,* 737 F.2d at 1505.

■ No such defense is presented here. First, plaintiff concedes that he read at least some of the agreement. Moreover, plaintiff's belief that his signature on the contract was required in order for him to be paid is insufficient to raise an inference that defendant misled him as to the nature of the document. Consequently, the conclusion is inescapable that the "application" constituted a contract.

## 2. The Agreement Was Integrated

■ Having found an express written contract of at-will employment, the Court must analyze whether that contract was integrated. *McLain v. Great American Insurance,* 208 Cal.App.3d 1476, 1483, 256 Cal. Rptr. 863 (1989); *see Slivinsky,* 221 Cal. App.3d at 805, 270 Cal.Rptr. 585 (integration is a question of law for the court). In determining whether an agreement is integrated, the Court considers factors such as:

[T]he language and completeness of the written agreement and whether it contains an integration clause, the terms of the alleged oral agreement and whether they contradict those in writing, whether the oral agreement might naturally be made as a separate agreement, and whether the jury might be misled by the introduction of parol testimony.

*McLain,* 208 Cal.App.3d at 1484, 256 Cal. Rptr. 863; *accord Malmstrom v. Kaiser Aluminum and Chemical Corp.,* 187 Cal.App.3d 299, 314, 231 Cal.Rptr. 820 (1986). An agreement may be integrated as to only some of its terms, in which case it is called a "partial integration." *See, e.g., Slivinsky,* 221 Cal. App.3d at 805, 270 Cal.Rptr. 585; *Wagner,* 216 Cal.App.3d at 1386–88, 265 Cal.Rptr. 412. The written employment agreement herein clearly could not have constituted the entire agreement of the parties, as it lacked such terms as plaintiff's position and salary.

The agreement did, however, constitute a partial integration, at least as to the term of at-will employment. The second and third of the *McLain* factors are dispositive of this issue. *See Wagner,* 216 Cal.App.3d at 1386–88, 265 Cal.Rptr. 412.[9] The written agreement provided expressly and repeatedly that employment could be terminated without notice or cause. These terms are completely inconsistent with an implied agreement that employment was terminable only for cause. In *Gerdlund v. Electronic Dispensers International,* 190 Cal.App.3d 266, 271, 235 Cal. Rptr. 279 (1987), the court explained the significance of the consistency between the written and parol agreements to the integration analysis: "[I]t cannot reasonably be presumed that the parties intended to integrate two directly contradictory terms in the same agreement."

*McLain,* 208 Cal.App.3d 1476, 256 Cal. Rptr. 863, in which the court found that an employment application did not give rise to an integrated agreement, is distinguishable. The application in that case also involved a standardized form that omitted significant terms of the employment relationship. The factor that seemed to be central to the

---

9. The court's conclusion in *Wagner* that the employment application gave rise to a partially integrated agreement that employment was to be at will was also supported by the fact that subsequent employee handbooks reiterated the notion that both parties were free to terminate employment.

court's holding, however, was that the application stated that the "terms and conditions of [the applicant's] employment may be changed, with or without cause, and with or without notice, at any time by the [employer]." 208 Cal.App.3d at 1480, 256 Cal.Rptr. 863. This language was consistent with plaintiff's contention that subsequent acts of the defendant gave rise to an implied contract that employment was terminable only for cause. Based in large part upon this consistency, the court found that the employment application was not an integrated agreement and that the evidence would be admissible even if it were. In the present case, by contrast, the "application" stated that its terms were binding upon plaintiff and could be altered only by a written agreement signed by plaintiff and the company president. Furthermore, and also unlike *McLain*, plaintiff's evidence relating to an implied contract in this case is entirely grounded in the period preceding the December, 1988, agreement.[10]

### 3. Plaintiff Has Failed to Present Competent Evidence of an Implied Contract

Because the employment contract was integrated as to the at-will term of employment, it is unnecessary to consider whether plaintiff's evidence creates a triable question of fact as to whether there was an implied agreement to terminate only for cause under either the *Pugh* factors or *Rabago–Alvarez*.[11] The parol evidence rule bars plaintiff from introducing evidence of a prior or contemporaneous agreement at variance with the parties' written agreement.[12] *See, e.g., McLain*, 208 Cal.App.3d at 1483, 256 Cal.Rptr. 863; *Gerdlund*, 190 Cal.App.3d at 270, 235 Cal. Rptr. 279. An agreement that employment is to be at will is fundamentally inconsistent with an agreement that employees can be terminated only for cause.

■■■ All of plaintiff's evidence of the alleged implied contract arose prior to the December, 1988, agreement. Plaintiff received the Company Employee Policies in 1983, when he was first hired.[13] (Opp. 3:26–27; Stretch Decl., Ex. A–20.) He received a training manual containing the Outline for Progress at some point prior to his move to California.[14] (Stretch Decl., Ex. A 158:3–22.) He allegedly received an assurance that his employment in California would be "permanent" before he agreed to accept the position. (Stretch Decl., Ex. D, ¶ 4.) Finally, plaintiff relies on the 1991 termination letter to support his contention that termination was required to be only for cause. (*See* Stretch Decl., Ex. A–2; Opp. 4:21–5:1.) Even assuming that the parties' express contract could be modified by an implied contract, plaintiff's termination letter came too late to form the basis of such a contract; therefore, it is irrelevant to plaintiff's claim. The parol evidence rule bars all of plaintiff's relevant evidence of an implied contract; therefore, the Court grants defendant's motion for summary judgment as to plaintiff's breach of contract claim.

### III. The Implied Covenant of Good Faith and Fair Dealing

■■■ Plaintiff's remaining claim is that defendant breached the covenant of good faith and fair dealing by terminating him without good cause. (*See* Complaint ¶¶ 14–15; Opp. 13:9–16.) In *Foley*, the Supreme Court of California held that this cause of action sounds in contract, not tort, *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 682–700, 254 Cal.Rptr. 211, 765 P.2d 373 (1988);

---

**10.** An additional factor that distinguishes *McLain* is that in that case the defendant had confirmed plaintiff's employment subsequent to the application in a letter that seemingly did not refer to at-will employment.

**11.** *See supra* note 6 for a list of these factors and for a brief discussion of *Rabago–Alvarez*.

**12.** In addition, some California cases have held that an express written contract for at-will employment cannot be modified even by a subse-

quent implied contract to terminate only for good cause. *See supra* note 3.

**13.** This document lists different kinds of conduct for which summary termination is prescribed. (*See* Stretch Decl., Ex. A–20.)

**14.** This document informed employees that "[y]ou will control your success with this Company by the amount of effort you put forth to learn these duties and responsibilities ... It's 100% up to you." (Stretch Decl., Ex. E.)

therefore, this Court's holding as to plaintiff's cause of action for breach of contract removes the basis of plaintiff's claim for breach of the covenant.[15]  Accordingly, the Court grants defendant's motion for summary judgment as to this claim, as well.

## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment in its entirety.  As the Court's order disposes of all of plaintiff's remaining causes of action, judgment will be entered forthwith.

SO ORDERED.

15.  Plaintiff's reliance on *Hejmadi v. AMFAC, Inc.*, 202 Cal.App.3d 525, 551–52, 249 Cal.Rptr. 5 (1988), is misplaced.  That case discussed the tort remedy for breach of the covenant of good faith and fair dealing, which the supreme court abandoned in *Foley.*